**William CRAWFORD, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Nos. 642–81C, 643–81C.**

United States Claims Court.

Aug. 25, 1983.

Paul A. Kiefer, Washington, D.C., for plaintiff.

Beecham O. Brooker, Jr., Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, for defendant; Thomas J. Feeney, Office of the Judge Advocate General United States Army, Washington, D.C., of counsel.

OPINION

NETTESHEIM, Judge.

After transfer from the United States District Court for the Northern District of West Virginia, these consolidated cases came before the court for disposition on summary judgment.

Three claims are presented. In No. 642–81C plaintiff William Crawford ("plaintiff") seeks reinstatement with back pay and retirement credit to a position with the U.S. Army Reserves (the "Reserves") as an Ad-

there was no greater reason for taxing the corporation on the stockholder's share of the same gain.

ministrative Supply Technician ("AST") from which he was terminated in 1973. Plaintiff also complains of his termination in 1979 from another position with the Army and the refusal of the Merit Systems Protection Board (the "MSPB") to reinstate him. · In No. 643–81C plaintiff seeks payment of benefits to which he claims entitlement under the Workers' Compensation Act.

## FACTS

■ Because the parties' characterizations of the facts vary significantly, the undisputed facts have been derived from the voluminous record transferred from the federal court in West Virginia, which contains the transcripts of related administrative proceedings.[1] For reasons to be discussed, plaintiff's affidavit is not a reliable factual source.

*Termination of Civilian Employment in 1973*

Plaintiff was an active Reserve warrant officer assigned to the 5030th U.S. Army Reserve School at Fort Benjamin, Indiana (the "5030th"), when, on February 6, 1972, he gained civilian employment as an AST for the 223rd Military Intelligence Detachment (the "223rd") in Gaithersburg, Maryland. Because a technician is required to remain with his unit in the event of a mobilization, a technician must, in addition to being an active member of an Army Reserve unit, request assignment in a military capacity to the particular unit which employs him. Plaintiff was never assigned to the 223rd in any military capacity. Nonetheless, a form dated February 15, 1972, signed by plaintiff and submitted to the civilian personnel office that hired him, states that he was a warrant officer in the 223rd on that date.

On May 8, 1972, plaintiff submitted a form requesting a transfer from the 5030th to a control group. Membership in a control group apparently is not an active reserve unit membership status. On the form plaintiff explained that he had intended to request assignment to the 223rd, but because the unit was undergoing reorganization his civilian job with the 223rd was only temporary. Plaintiff's request was granted and he was transferred effective May 1, 1972, thereby relinquishing active reserve unit membership.

On March 28, 1973, plaintiff received notification of a proposal to remove him from his civilian post. The proposal was based on four grounds: 1) voluntarily relinquishing the required active reserve unit membership by transferring from the 5030th to the control group; 2) failing to request assignment to the unit which he actually served; 3) making false statements on the request for transfer (that his civilian position with the 223rd was temporary and that the 223rd was undergoing reorganization); and 4) falsely stating on the form submitted on February 15, 1972 that he was a member of the 223rd.

Plaintiff did not contest the first charge of voluntarily relinquishing active status and never contended that he had joined the 223rd, but only that he had applied to join but was turned down. On August 29, 1973, the Army upheld plaintiff's removal on all four grounds. The regional Civil Service Commission (the "CSC") sustained the dismissal, and the CSC Appeals Review Board affirmed on July 31, 1974. Plaintiff by a June 4, 1976 letter to the CSC demonstrated his lack of confusion concerning the reasons for his termination.

*Discharge From the Reserves in 1975*

While plaintiff was still employed by the 223rd as a civilian technician in early 1972, the 5030th, to which plaintiff then belonged in his military capacity, received four forms (hereinafter referred to as the "1380's")

---

1. The administrative records have been certified by agency officials in accordance with RUSCC 44(a). Certified administrative records can properly form the basis for summary judgment. *Crawford v. Brown,* No. 81–002–M (N.D.W.Va. Oct. 23, 1981) (citing *Langston v.*

*Johnson,* 478 F.2d 915 (D.C.Cir.1973)), *rev'd and remanded,* 691 F.2d 494 (4th Cir.1982). To avoid the defense of laches to his 1973 claim, plaintiff has taken the position that this claim specifically is to be reviewed on the administrative record.

bearing the signature of the 223rd's Commander, Major Frederick T. Cioffi ("Cioffi"), which certified that plaintiff was performing military duties for the 223rd in fulfillment of his Reserve requirements. The purpose of these forms was to establish plaintiff's entitlement to pay and retirement points from the 5030th. According to Cioffi's subsequent affidavit, his signatures on the 1380's were forged and plaintiff never performed the duties for which he was paid.

On June 18, 1973, the Reserves initiated proceedings to expel plaintiff based on a charge that he had forged the 1380's. Plaintiff appeared before an Army Elimination Board on April 21, 1975, denied forging the forms and testified further: "I hope you can find it in your hearts that I am not the man.... I am willing to take a polygraph test [sic] I did not at all know who was trying to help me ...." He was asked, "You are under oath and you say that you know somebody helped you out?" He replied, "I knew alot [sic] of individuals [sic] whether they did anything I don't know." Plaintiff never contended that the forms were genuine. Cioffi was unavailable for cross-examination in this proceeding. Plaintiff was acquitted of forging Cioffi's signature on the forms, but found guilty of conspiracy in the forgery of the 1380's. On October 17, 1975, the board's decision was set aside because the board had been improperly constituted. Plaintiff was ordered to be discharged on December 15, 1973, nonetheless, because he had been passed over for promotion.

*Termination from Civilian Employment in 1979 and Workers' Compensation Claim*

While these proceedings were in progress, plaintiff persisted in his efforts with the CSC's Appeals Review Board to reopen the proceedings concluded in 1974 on his removal from civilian employment. Plaintiff was repeatedly turned down and on September 8, 1976, was finally and unequivocally rebuffed and directed to the courts.

Plaintiff also made a Privacy Act request to the CSC's Bureau of Personnel Management Information Systems (the "BPMIS")

to delete from his Standard Form 50 (the 1973 "Notification of Personnel Action") (the "SF 50") reference to his false statement regarding membership in the 223rd. This request was rejected on April 12, 1976.

On May 10, 1977, plaintiff submitted an application for employment as a laborer to the New Cumberland Army Depot, New Cumberland, Pennsylvania (the "Depot"), followed by a Personal Qualifications Statement dated August 19, 1977. Each employment form queried, "Within the last five years have you been fired from any job for any reason?" Plaintiff responded in the negative on both forms.

On January 23, 1978, the Army revoked plaintiff's 1975 discharge from the Reserves on the ground that plaintiff's failure to be promoted (the reason for his discharge) had been caused by his inability to participate in the Reserves while he was under investigation on the forgery charge in 1974 and 1975. The Army granted plaintiff a waiver of unsatisfactory participation for the retirement years ending February 20, 1975, 1976, and 1977. Encouraged by this development, plaintiff wrote again to the BPMIS seeking to have the SF 50 purged of the language about his relinquishing active Army Reserve membership in addition, apparently, to removal of the reference to his false claim of membership in the 223rd. Plaintiff argued that because the Army had revoked his discharge, the BPMIS should correct the record of his 1973 removal. Instead, the BPMIS wrote the Depot on June 12 advising it to contact plaintiff's former employer. This inquiry in due course revealed plaintiff's 1973 termination. Thereupon, the Civilian Personnel Officer at the Depot, on August 9, 1978, recommended plaintiff's termination for falsely stating on his application that he had not been fired within the previous five years.

A new misfortune had already intervened, however, to grant plaintiff a temporary reprieve. On June 2, 1978, plaintiff sustained a job-related injury. Accordingly, the Depot postponed its termination action against plaintiff until he returned to work, thereby enabling him to collect his

compensation benefits.[2] Plaintiff's return was delayed until May 14, 1979, after he received a prescribed ankle brace. Meanwhile plaintiff had filed suit against the Depot on March 27, 1979, in the United States District Court for the Middle District of Pennsylvania, apparently in connection with delays in the processing of his compensation claims. The suit was dismissed without prejudice on April 8, 1980.

On June 15, 1979, after he returned to work, plaintiff was notified of his proposed termination for making false statements on his application for employment. Plaintiff wrote again to the BPMIS on June 19, renewing his demand that the SF 50 be purged. On June 21, 1979, plaintiff's counsel wrote the Office of Appeals of the MSPB seeking to void in its entirety plaintiff's 1973 removal from civilian employment. This was plaintiff's first attempt since 1976 to have his 1973 removal nullified, as opposed to merely having the SF 50 purged. His letter to the MSPB dated June 9, 1980, indicates a clear understanding of the distinction. On February 25, 1980, the Director of the MSPB's Office of Appeals replied stating that plaintiff's appeal to void the removal was untimely because it was based on an Army decision taken a year and a half beforehand, in January, 1978. The Depot terminated plaintiff effective July 27, 1979.

The regional MSPB upheld the dismissal. After a remand on the issue of whether the 1979 firing constituted a reprisal for plaintiff's lawsuit in federal court in Pennsylvania, as plaintiff had alleged, the MSPB affirmed in an order dated December 3, 1980, in which it advised plaintiff of his right to seek judicial review. The order was sent to plaintiff by certified mail on December 4. On January 16, 1981, plaintiff *pro se* filed *Crawford v. Brown, et al.,* CA No. 81–0002–M (N.D.W.Va.) [*"Brown"*], challeng-

ing his 1973 and 1979 removals. Plaintiff already had filed *Crawford v. Marshall, et al.,* No. 80–0027–M [*"Marshall"*] in the same court on October 14, 1980, renewing his claim for unpaid workers' compensation benefits to which he claimed entitlement. A Chapter 7 bankruptcy petition had been instituted by plaintiff on September 2, 1980.

On October 23, 1981, the district court dismissed the 1973 removal claim as barred by limitations and ordered the other claims in *Brown,* as well as *Marshall,* transferred to the United States Court of Claims. Both suits were filed in the Court of Claims. *Brown* was numbered 642–81C; *Marshall,* 643–81C. The cases were suspended while plaintiff appealed the dismissal of his 1973 removal claim. The United States Court of Appeals for the Fourth Circuit reversed the district court's dismissal, ruling that the United States Court of Claims had exclusive jurisdiction over the 1973 claim and ordered transfer of this claim, as well. The district court complied, and thereafter plaintiff by counsel filed new complaints in both suits in the United States Claims Court.

## DISCUSSION

Defendant moved for summary judgment arguing that the 1973 claim was barred by laches and limitations; that the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 127(a), 96 Stat. 25, 39 (1982) (to be codified at 28 U.S.C. § 1295(a)(9)), gave the Federal Circuit exclusive jurisdiction over the 1979 claim which, however, was filed after expiration of the 30-day period for appealing MSPB decisions; that the Claims Court lacked jurisdiction to review awards of workers' compensation; and that plaintiff's discharge in bankruptcy rendered him no longer the real party in interest as to any of his claims. Plaintiff opposed defendant's motion, requested trans-

---

**2.** The application for workers' compensation, signed by plaintiff and dated June 5, 1978, has plaintiff catching his foot on a portable platform, while throwing trash onto a trailer, and turning his ankle. Ex. A to Complaint in *Crawford v. Marshall, et al.,* No. 80–0027–M (N.D. W.Va. filed Oct. 30, 1981) [*"Marshall"*]. Ac-

cording to the physician's report dated July 24, 1978, however, plaintiff "gave a history of falling off a dock...." *Id.* Ex.H. Plaintiff was diagnosed for "pain and swelling in right ankle." *Id.* Ex.J. By November 20, plaintiff had fallen 25 feet from a loading dock. *Marshall* Compl. ¶¶ 13, 27, Ex.Q.

fer of his 1979 claim to the United States Court of Appeals for the Federal Circuit, and cross-moved for summary judgment on the 1973 termination.

*The 1979 Removal Claim*

Although defendant is unable to controvert plaintiff's sworn statement that he remembers appealing the MSPB decision on time (43 days after mailing), Plf's Affidavit ¶ 5, because the MSPB has lost the return receipt, defendant has argued that transfer of the 1979 claim to the Federal Circuit, the cognizant court, would not be in the interest of justice. Pub.L. 97–164, § 301(a), 96 Stat. 55 (1982) (to be codified at 28 U.S.C. § 1631).

On the subject of his 1979 removal, plaintiff stated that the reason he denied on the 1977 job application to the Depot that he had been fired within the previous five years was that, prior to completing the application, he had contacted the CSC about voiding his 1973 removal and had received a favorable response. In his affidavit submitted as support, plaintiff avers that he contacted the CSC about voiding the 1973 removal as a result of the Army's decision to revoke his 1975 discharge in 1978. Plf's Affidavit ¶ 2. Plaintiff could not have relied on encouragement from the CSC about voiding his 1973 removal when he completed the application in 1977, because by his own account he did not contact the CSC concerning voiding his removal until 1978.

Furthermore, the record reveals that, after the CSC Appeal Review Board's decision refusing to reopen plaintiff's 1973 case in 1976, plaintiff did not contact the Appeals Review Board again until 1979. Instead, he merely made a Privacy Act request to the BPMIS seeking deletion of the unfavorable remarks on the 1973 notification of dismissal. Far from being successful, the latter request precipitated plaintiff's dismissal from the Depot. When plaintiff renewed the same request in 1979, he met with no satisfaction.

■ Confronted with these difficulties at oral argument, plaintiff abandoned this theory and argued that if his 1973 removal should be voided, plaintiff's 1979 removal

based on his denying the 1973 removal in the application to the Depot in 1977 also should be overturned. Plaintiff candidly admitted that his 1979 claim depended on the success of his 1973 claim. Plaintiff has taken the position that the 1973 claim is to be reviewed on the administrative record, which reveals that plaintiff has seriously misrepresented to the MSPB and this court the events surrounding his 1973 removal and that he misled both tribunals on the nature and timing of the events which constituted the original basis of his 1979 claim: plaintiff's contacts with the CSC regarding his 1973 removal. It appears to the satisfaction of the court, pursuant to RUSCC 56(g), that ¶¶ 2–4 of plaintiff's affidavit, which deal with plaintiff's contacts with the CSC, were made in bad faith, and these paragraphs accordingly are struck. For reasons discussed below, summary judgment will enter against plaintiff on his 1973 claim. In these circumstances the interest of justice would not be served by allowing plaintiff's 1979 claim to be resurrected in another forum.

*The 1973 Removal Claim*

Plaintiff also attempts to meet defendant's argument that the claim based on his 1973 removal is barred by the court's six-year statute of limitations by his sworn statement, Plf's Affidavit ¶¶ 3–4, that he relied upon favorable responses from the CSC to his requests to void the 1973 removal in postponing his suit on this issue. He argues that defendant therefore is estopped from raising limitations. These paragraphs as of plaintiff's affidavit have been struck.

■ On the merits of his 1973 claim and, specifically, the charge that he falsely claimed membership in the 223rd, plaintiff offers as evidence that he had been a member of the 223rd the same DA Form 1380's, bearing Major Cioffi's purported signature, which, in 1975, the Elimination Board found plaintiff guilty of conspiring to forge. Plaintiff adds:

I had provided copies of these documents to the Army Board that was determining

whether to discharge me from the Army and it was this evidence among other things that resulted in that Board's decision that I was to remain in the active Army Reserve Program.

Plf's Affidavit ¶ 6.

Although the conviction was overturned due to the composition of the board, plaintiff never contended in the Elimination Board proceeding that the documents were genuine, but denied that he was the one who committed the forgery. The fact that the conviction was overturned also does not rehabilitate plaintiff's sworn statement that it was the evidence of those 1380's which resulted in the Elimination Board's alleged decision not to discharge him. Plf's Affidavit ¶ 6. Lastly, it should be pointed out that the documents, if genuine, would prove not that plaintiff was a member of the 223d, but that plaintiff was still a member of the 5030th.

█ Paragraph 6 of plaintiff's affidavit is struck as made in bad faith, and summary judgment shall be entered against plaintiff on his 1973 claim pursuant to RUSCC 56(e).[3] In any event the 1973 claim is time-barred. The statute of limitations is jurisdictional in this court *Parker v. United States,* 2 Cl.Ct. 399, 402 (1983) (NETTESHEIM, J.) (citing cases). Even if they had been raised legitimately, estoppel principles would be irrelevant.

### The Workers' Compensation Claim

█ Plaintiff responded to defendant's argument, based on 5 U.S.C. § 8128 (1982), that an award of workers' compensation by the Department of Labor is not subject to judicial review, by relying on his sworn statement that "I am not contesting the amount of the [Department of Labor's] award, but the fact that I did not receive all of the money that was awarded. In this regard my best recollection is that between $600.00 and $1,000.00 is still due me based

upon what the Department of Labor indicated I would receive." Plf's Affidavit ¶ 7. Plaintiff claims that this is a material issue of fact that cannot be resolved by a motion for summary judgment.

The issue which will defeat a motion for summary judgment must be genuine and not merely formal or ostensible. 35B C.J.S. *Fed.Civ.P.* § 1152 (1960). From the record, admittedly incomplete on this subject, and from the pleadings in both suits, it appears that the Department of Labor refused to pay plaintiff compensation for lost wages beyond August 17, 1978; that the Depot failed or delayed to process subsequent applications for such compensation; that the Department of Labor failed or delayed to pay invoices for medical services rendered plaintiff; and that all benefits ceased after plaintiff was fired in July 1979. The gravamen of plaintiff's claim is the denial of benefits by the Department of Labor. None of the above facts or allegations would support a justiciable claim for relief.

Plaintiff's sworn statement that money is due him states a conclusion of law based on facts which are unrevealed, except for the vague reference to "what the Department of Labor indicated I would receive." One of the purposes of summary judgment is to determine if the parties have evidentiary support for their versions of the facts. 35B C.J.S. *Fed.Civ.P.* § 1136. A party opposing summary judgment "must do more than whet the curiosity of the court; he must support vague accusations and surmise with concrete particulars." *Applegate v. Top Associates, Inc.,* 425 F.2d 92, 96 (2d Cir. 1970); *see Lehner v. United States,* 1 Cl.Ct. 408, 413 (1983) (NETTESHEIM, J.) (citing cases), *appeal docketed,* No. 83–933 (Fed. Cir. Apr. 15, 1983). No defense to an insufficient showing is required. 425 F.2d at 344. *Neely v. St. Paul Fire & Marine In-*

---

**3.** The theory of plaintiff's 1973 claim as it emerges from the complaint in 642–81C develops the argument used in plaintiff's Privacy Act request that, because plaintiff's 1975 discharge was revoked, his 1973 removal should be over-turned also. Plaintiff now supplies the missing link by alleging that his 1975 discharge and 1973 civilian dismissal were based on the same charge of falsely claiming membership in the 223rd.

*surance Co.,* 584 F.2d 341, 345 (9th Cir. 1978).[4]

At oral argument plaintiff admitted the need for discovery in order to substantiate his belief that a sum certain was awarded, but not paid in full. Plaintiff has not invoked RUSCC 56(f) or given any indication of what facts he expects discovery to reveal or what has prevented him hitherto from obtaining the desired information. The mere hope that discovery may uncover some evidentiary basis for a party's version of the facts will not suffice. *Neely,* 584 F.2d at 344. Summary judgment therefore will be entered against plaintiff on his worker's compensation claim pursuant to RUSCC 56(e).[5]

## CONCLUSION

Defendant's motion is granted; plaintiff's is denied. The complaints will be dismissed.

IT IS SO ORDERED.

---

4. Plaintiff's cross-motion contains an allegation, unsupported by the affidavit, that a dispute exists about how much money was actually paid plaintiff. A statement of fact in a brief cannot be given the dignity of a pleading for consideration on a motion for summary judgment. 35B C.J.S. *Fed.Civ.P.* § 1209. General allegations in pleadings, unaccompanied by specific concrete facts, also are insufficient to prevent the award of summary judgment. RUSCC 56(e).

5. The court does not reach the issue of the effect of plaintiff's bankruptcy proceedings on his claims in this court.