CARRIER CORPORATION

v.

The UNITED STATES.

No. 534–83C.

United States Claims Court.

Aug. 7, 1984.

D. Joe Smith, Washington, D.C., attorney of record for plaintiff. Keck, Mahin & Cate, Washington, D.C., of counsel.

Michael T. Paul, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., attorney of record for defendant.

## OPINION

LYDON, Judge:

In this Contract Disputes Act case, *see* 41 U.S.C. § 609(a)(1) (Supp. V. 1981), plaintiff, in its complaint, seeks reformation, or alternatively, an equitable adjustment, of a mechanical maintenance service contract it entered into with the General Services Administration (GSA) on the ground of a unilateral pre-bid mistake on plaintiff's part relative to its bid submission. While plaintiff, in response to the contracting officer's request for bid verification, did verify its bid, plaintiff contends that the contracting officer's bid verification request was inadequate and in violation of the duty imposed on contracting officers by applicable Federal Procurement Regulations (FPR). Defendant, in its answer to said complaint, disputes plaintiff's contention. The issue, as framed by the pleadings, is the adequacy and propriety of the contracting officer's bid verification request.

Defendant has moved for summary judgment, to which it has attached evidentiary material in support thereof. Plaintiff opposes defendant's motion on the ground that material issues of fact exist which render disposition by summary judgment inappropriate. Plaintiff does not support its opposition by any evidentiary material or by any affidavit. Plaintiff did attach to its complaint copies of the contract documents, *i.e.*, the Solicitation, Amendments thereto and the Contract itself. After consideration of the pleading and the briefs of the parties, and without oral argument, the court concludes that defendant's motion for summary judgment should be granted.

### I.

On July 2, 1982, GSA issued an Invitation for Bids (IFB) for mechanical maintenance service at the United States Customhouse in Chicago, Illinois. The bid opening time and date was set for 11:00 a.m. on July 27, 1982. Under Part 4, subpart 9, entitled "Repairs" of the IFB, the contractor was required to perform, as part of the services to be provided under the contract, "all incidental repairs necessary to prevent a breakdown or failure of a piece of equipment or systems." This same subpart also provided that "[t]he contractor will not be required to perform any minor repairs under this contract." In essence, the IFB provided that the contractor would be responsible, as part of the contract price, for incidental, but not for minor repairs.

Part 3, subparts 2 and 3 of the IFB defined "Minor Repairs" and "Incidental Repairs". In substance, minor repairs were defined as unscheduled work where

the cost "is expected to exceed $1,000 but not more than $10,000 for labor, supervision, supplies and contractual services." Incidental repairs were defined as follows:

Incidental maintenance, repairs, replacement, and modifications required whose estimated cost exceeds three manhours of labor and is $1,000 or less. The repair may be required to prevent a breakdown of a piece of equipment or system or to put it back in service after a breakdown or failure where the nature of the work is not already included in the tour, watch, preventive maintenance and service call programs.

As a result of these definitions, the contractor's repair obligations under the IFB were limited to repairs costing $1,000 or less.

The July 2, 1982, IFB was thereafter amended twice. Amendment No. 1, effective July 26, 1982, postponed the bid opening time and date pending issuance of Amendment No. 2 which was to change certain requirements in the IFB as well as set a new bid opening time and date. Amendment No. 2, effective July 27, 1982, which served as the catalyst for this litigation, amended Part 4, subpart 9, entitled "Repairs", discussed above, to provide that "[a]s part of the services provided under this contract, the contractor shall perform all incidental and minor repairs necessary to prevent a breakdown or failure of a piece of equipment or systems." This subpart was also amended to provide that "[t]he contractor will not be required to perform any repair work over $10,000 under this contract. The critical effect of Amendment No. 2 was to increase the types of repairs for which the contractor would be responsible under the contract from those costing $1,000 to those costing $10,000. Amendment No. 2 advised the new bid opening time and date was 11:00 a.m. on August 18, 1982. Amendment No. 2 contained 17 pages. Plaintiff received Amendment No. 2 shortly after it was issued.

On August 18, 1982, the bids, in response to the IFB, were opened. The bid abstract showed that plaintiff, as low responsive bidder, quoted a monthly price of $5,957, and an hourly overtime charge of $28. The next lowest responsive bidder quoted a monthly price of $11,900, and an hourly overtime charge of $50. The highest responsive bidder quoted a monthly price of $14,070, and an hourly overtime charge of $29. The Bid Opening Attendance Record shows that a representative of Carrier was present at the bid opening and most probably was aware of the quoted prices of the other bidders after the bids were opened.

On September 10, 1982, the contracting officer wrote plaintiff in pertinent part:

Government Procurement Regulations require that the Contracting Officer request verification of a bid where it is suspected that a mistake may have been made. It is requested that your bid prices of $5,957.00 per month for the services and $28.00 per hour for overtime be verified. This request is made since your bid price is out of line with the Government estimate and other bids received.

Plaintiff responded to this letter on September 13, 1982, in pertinent part as follows:

We have reviewed our estimate and have verified that our bid price is correct in accordance with job specifications.

Accordingly, we are looking forward to receiving your maintenance service order for these facilities with an effective date of November 1, 1982.

By letter dated October 7, 1982, the contracting officer advised plaintiff in pertinent part:

Your bid on Invitation for Bid GS–05B–42258, for mechanical maintenance service at the U.S. Customhouse, 610 S. Canal, Chicago, Illinois for the period November 1, 1982 through October 31, 1985, is accepted for award at a price of $5,957.00 per month for the period involved and with an hourly overtime rate of $28.00. Accordingly, your firm is awarded the enclosed contract of the same number.

Plaintiff was given notice to proceed under the contract on October 21, 1982, with performance to begin on November 1, 1982.

By letter dated November 8, 1982, plaintiff advised the contracting officer in pertinent part that:

In reviewing the entire bid process from Carrier's end, I have been able to determine the events which led to our error. I offer them now for your review, and would appreciate the opportunity to meet with you to further discuss and explain as necessary.

The original specifications were received in this office the second week of July. They were reviewed and a bid was prepared for the original July 22, 1982 opening date. Subsequent to that we were notified that the bid date was postponed. We reviewed Amendment # 1, which put us on notice that Amendment # 2 would be forthcoming. At this time, the gentleman handling this bid preparation, along with three other G.S.A. solicitations in different parts of the country, was hit with personal crisis of losing his father. This resulted in him being out of state for ten (10) days.

During that time Amendment # 2 was received in the office, and placed in his incoming mail. Upon returning and reviewing the back log of mail, review of Amendment # 2 was accomplished. It appears now that the top page was separated from the remaining three pages. [It is to be noted that Amendment No. 2 contained 17 pages.] The review was hurried, and apparently only the two items on page one concerning the new bid time and experience factor were addressed. The gentleman was unaware of the remaining three pages.

The bid documents were prepared for the August bid opening, delivered, after which we were notified that we were the low bidder on the project.

On September 10, 1982 you sent a certified letter requesting verification of our bid price. Again, the same gentleman reviewed his documents and on September 13, 1982 wrote to you verifying the original price as being correct in accordance with job specifications. He did so after review of his job file, which did not contained the entire Amendment # 2. He felt his price was correct based upon the information he had at hand. I believe, since he had been so involved in the past with G.S.A. specifications for this type of project, he just missed the significance of your letter.

It was not until I was given the job to review with the Project Manager, Mr. Dunn, that we became aware of the mistake. This was noted after a job site meeting with G.S.A. personnel on October 29, 1982.

We found the entire Amendment # 2 mixed in with another G.S.A. file, and after review, determined the extent of the error. Based upon the additional requirements of the Amendment, we are very significantly under price on this job. In repricing the project we have determined that we are $61,392.00 short. That would make the contract price $132,876.00 per year or $11,073.00 per month.

By letter dated January 3, 1983, the contracting officer requested plaintiff to provide "all pertinent evidence which will serve to establish the mistake, the manner in which it occurred, and the bid actually intended." On January 13, 1983, plaintiff forwarded to the contracting officer its bid mistake package. Included in this package of documents was an attachment containing plaintiff's original worksheets used in the preparation of its bid proposal. An examination of these worksheets do not show any apparent mathematical or clerical errors. These worksheets reveal a total contract proposal price of $76,140.

On April 28, 1983, the contracting officer issued a final decision denying plaintiff's request for a correction of the mistake in bid after the award was processed in pertinent part as follows:

A representative of your firm was in attendance at the bid opening held on August 18, 1982 and knew of the disparity in bid prices from the beginning. Ver-

ification of your bid price was requested on September 10, 1982 and subsequently received on September 13, 1982. Amendment Nos. 1 and 2 had been acknowledged by your firm.

On July 6, 1983, plaintiff submitted a certification of its claim to the contracting officer, who, on July 27, 1983, advised that "the final decision issued [by the contracting officer] on April 28, 1983, remains in effect." Plaintiff filed its complaint in this court on August 22, 1983.

There is no dispute about the facts set forth above.

## II.

■ The equitable remedy of reformation to correct a unilateral mistake in a plaintiff's bid is available only if "the government knew or should have known of a mistake in a bid costly to the bidder. *Burnett Electronics Lab., Inc. v. United States,* 202 Ct.Cl. 463, 472, 479 F.2d 1329, 1333 (1973). *See also Aydin Corp. v. United States,* 229 Ct.Cl. 309, 669 F.2d 681 (1982); *Bromley Contracting Co. v. United States,* 227 Ct.Cl. 569, 572–573, 652 F.2d 70 (1981); *Chernick v. United States,* 178 Ct.Cl. 498, 506, 372 F.2d 492, 496–497 (1967). In *Ruggiero v. United States,* 190 Ct.Cl. 327, 335, 420 F.2d 709, 713 (1970), the rationale and policy behind allowing reformation in such cases was stated in pertinent part as follows:

> * * * what we are really concerned with is the overreaching of a contractor by a contracting officer when the latter has the knowledge, actual or imputed as something he ought to know, that the bid is based on or embodies a disastrous mistake, and accepts the bid in face of that knowledge.

Consistent with this policy, the court has held that there is no overreaching by the government, and the contract will not be reformed, in cases where the government requests and receives adequate verification of the bid price from the bidder before the contract is awarded. *Alabama Shirt & Trouser Co. v. United States,* 121 Ct.Cl. 313 (1952).

■ Both case law and applicable regulations require that the government's request for verification, to be legally adequate, include the reasons for the contracting officer's suspicion that the bid may contain a mistake. *United States v. Hamilton Enterprises, Inc.,* 711 F.2d 1038, 1045–46 (Fed.Cir.1983); *United States v. Metro Novelty Mfg. Co.,* 125 F.Supp. 713 (S.D.N.Y.1954). Section 1–2.406–3(d)(1) of the Federal Procurement Regulations (FPR) (41 CFR § 1–2.406–3(d)(1)) describes the requirements of a legally adequate request for verification as follows:

> Whenever the contracting officer suspects that a mistake may have been made in a bid, he shall immediately request the bidder to verify the bid. Such request shall inform the bidder why the request for verification is made—that a mistake is suspected and the basis for such suspicion; *e.g.,* that the bid is significantly out of line with the next low or other bids or with the Government's estimate.

If the government's request for verification is inadequate under the standards set out in this regulation, it is without legal effect, and a plaintiff may seek reformation of the contract as though the verification request was never made. *See* Hagberg, *Mistake In Bid, Including New Procedures Under Contract Disputes Act of 1978,* 13 Pub. Contract L.J. 257, 265–268 (1983); Doke, *Mistakes in Government Contracts—Error Detection Duty of Contracting Officer,* 18 Sw.L.J. 1, 29 (1964).

Plaintiff contends that the government's verification request failed to meet the requirements of applicable case law and regulations.

■ Plaintiff concedes that the contracting officer did not have actual notice of plaintiff's prebid mistake. Plaintiff instead argues that the contracting officer had constructive knowledge, or should be held to have had constructive knowledge, that a mistake had been made. This position brings into focus the adequacy of the bid verification request sent to plaintiff. It is

important to keep in mind that sending a verification request does not by and of itself indicate that a contracting officer has actual or constructive knowledge that a mistake in bid has occurred. *See Paragon Energy Corp. v. United States,* 230 Ct.Cl. 884, 887 (1982); *Tountasakis v. United States,* 230 Ct.Cl. 812, 815 (1982).

The verification request in question set forth the reason why the contracting officer "suspected" a mistake in its bid, *i.e.,* plaintiff's bid price was "out of line with the Government estimate and other bids received". This verification request complied with the FPR, *supra.* In fact, the verification request contained practically the exact words set out in this regulation as an example of an adequate verification request. Thus the verification request, without more, must be deemed sufficient. Plaintiff undoubtedly already knew what the bids of the other contractors were since it had a representative at the bid opening. It therefore knew that its $5,957 bid per month was considerably under the $11,900 and $14,070 bids per month submitted by the two other responsible bidders. While the government's bid estimate per month was not revealed to plaintiff, nor did plaintiff ask for it, this per month estimate figure of $8,974.05, while higher than plaintiff's bid, was lower than the bids of the other two contractors.

Since plaintiff found no significance in the disparity between its bid and the bids of the other contractors, it is reasonable to assume it would likewise have found no significance in the lesser disparity between its bid and the Government's estimate. Moreover, there is no allegation nor has plaintiff presented any indication by way of evidentiary material, documentary or affidavit, that would suggest, by inference or otherwise, that the government's estimate per month figure would have assisted the plaintiff in discovery of its bid error. It is important, in this regard, to keep in mind the nature of the error in question. The error was plaintiff's failure to properly handle Amendment No. 2 after its receipt. The error was either negligence, sloppiness or careless handling of contract documents by plaintiff's personnel. Given this type of error, and given the fact that the government's estimate, like the per monthly bids of the other contractors, was a total figure, it is difficult to see how the availability of the government's estimate would have assisted plaintiff in discovering the error before bid since the bid prices of the other bidders were available to plaintiff and this knowledge did not help plaintiff locate the error.

The mere fact that a government estimate was not made available does not, *per se,* mean that the verification request was inadequate. Further, the mere discrepancy between plaintiff's bid and the bids of others and the government's estimate does not, *per se,* support an inference of imputed or constructive knowledge of bid mistake on the part of the contracting officer. *Aydin Corp. v. United States, supra,* 229 Ct.Cl. at 317, 669 F.2d at 686. There must be other circumstances existing and evidenced in some way, which are totally lacking in plaintiff's opposition brief, before the failure to make the government's estimate available will be viewed as constituting an inadequate verification request.[1]

1. For example, in *United States v. Hamilton Enterprise, Inc.,* 711 F.2d 1038, 1045 (1983), the Federal Circuit held that a government's verification request was inadequate for failure to provide the government's estimate where the basis for the suspicion of mistake did not involve the bids of other bidders but concerned the vast disparity between Hamilton's bid and the government's estimate and the probability that a possible error existed in the labor manhour figures of the bidder; and where in a comparable situation involving another bidder the government asked said bidder to provide a verification of its bid and supplied said bidder with the government's manhour estimate. The Federal Circuit concluded that the failure to accord Hamilton the same treatment was a critical factor in reaching a determination that the verification request was inadequate because of the failure to provide Hamilton with the government's manhour estimate, once Hamilton submitted its manning charts which were grossly under the government's estimates. *See also BCM Corp. v. United States,.* 2 Cl.Ct. 602, 610 (1983) (contracting officer's full knowledge of matter not communicated to bidder in verification request). There is no evidentiary material

■ Plaintiff concedes the nature of plaintiff's mistake was not mathematical or clerical. It is settled that a contract will not be reformed because of a unilateral mistake in a bid unless the contractor establishes that the error resulted from a clear cut clerical or arithmetical error, or a misreading of the specification. *United States v. Hamilton Enterprises, Inc., supra*, 711 F.2d at 1046. As a result, not every prebid mistake by a contractor will support post-award reformation. For example, a unilateral mistake in judgment is not the type of mistake that can be imputed or deemed constructive notice to the government so as to support a reformation claim. *Id*, 711 F.2d at 1048. The mistake in this case, mishandling of the contract amendment and thus not reading said amendment, borders on negligent or careless action, the knowledge of which should not be imputed to the government by the fiction of constructive notice. Such a unilateral mistake, like an error in judgment, would create dilemmas for contracting officers they should not have to shoulder. *See American Ship Building Co. v. United States*, 228 Ct.Cl. 220, 228, 654 F.2d 75, 80 (1981).

■ On the basis of the pleadings and the materials submitted by defendant in support of its motion for summary judgment, it is concluded that the contracting officer's verification request was adequate and reflected the contracting officer's total knowledge and awareness of any suspicion that a mistake in bid had been made. There is no basis for inferring that plaintiff's mishandling of Amendment No. 2 should be imputed to the contracting officer or that the contracting officer should be deemed to have constructive knowledge of the careless action which underscored plaintiff's mistake in bid.

Plaintiff accepts the fact, it would appear, that the present materials before the court would not support a finding that the contracting officer had constructive knowl-

edge that plaintiff's bid was mistaken. In fact, as indicated above, the materials before the court support a contrary view. Plaintiff opposes defendant's motion for summary judgment on the ground that a trial is necessary to determine the extent of the contracting officer's knowledge of plaintiff's bid mistake. Plaintiff maintains it needs discovery to determine these facts.

Other than the assertions of counsel in plaintiff's opposition brief, there is nothing in the materials before the court which suggest, hint or show by inference or otherwise that the contracting officer had any constructive knowledge relative to plaintiff's mistake. Plaintiff has not submitted any evidentiary material, documentary or otherwise, from which one could even consider doubts, inferences and credibility on the constructive notice matter. *See Housing Corp. of America v. United States*, 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972).

■ Mere assertions by counsel and general allegations which do not show the facts in detail and with some specificity by countering evidentiary material are not sufficient to block a grant of summary judgment. *Royal Indemnity Co. v. United States*, 178 Ct.Cl. 46, 51, 371 F.2d 462, 465 (1967). Indeed, RUSCC 56(e) of this court provides in pertinent part that "an adverse party may not rest upon mere allegations or denials of his pleading, but his response [to a motion for summary judgment], by affidavits or as otherwise provided in this rule, must set forth facts showing there is a genuine issue for trial." Plaintiff ran the risk of a grant of summary judgment by failing to disclose the evidentiary basis for its contention that the contracting officer had constructive knowledge of its mistake in bid. *See 6 Moore's Federal Practice* ¶ 56.15[3] at 56–483 (2d ed. 1983).

The essence of plaintiff's opposition brief is that additional facts may show that the contracting officer had constructive knowledge of plaintiff's mistake. This approach

at hand that suggests that the contracting officer's full knowledge of the matter was not communicated to plaintiff. The contracting officer

certainly had no knowledge, nor could the contracting officer assume or infer, that plaintiff would not properly handle Amendment No. 2.

is not enough to defeat a motion for summary judgment. In *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,* 739 F.2d 624 at 627 (Fed.Cir.) (1984), the Federal Circuit held that "[s]ummary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint." *Accord, Crawford v. United States,* 3 Cl.Ct. 323, 329 (1983) and cases cited therein. As matters now stand, plaintiff has failed to show that either discovery or trial will disclose specific factual issues regarding the constructive knowledge of the contracting officer *vis a vis* the plaintiff's bid mistake. Plaintiff has not even "whet the curiosity of the court" in this regard. *See Applegate v. Top Associates, Inc.,* 425 F.2d 92, 96 (2d Cir.1970).

■ Following the filing of defendant's motion for summary judgment plaintiff had ample time to obtain materials and/or affidavits by discovery or other means to create issues of fact requiring trial relative to the matter of the contracting officer's constructive notice of plaintiff's bid mistake, if indeed such an issue of fact exists. The Rules of this court specifically provide for such circumstances. *See* RUSCC 56(f). See in this regard *Securities & Exch. Com'n. v. Spence & Green Chem. Co.,* 612 F.2d 896, 901 (5th Cir.1980), *cert. denied,* 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981). Had plaintiff taken the deposition of the contracting officer in response to defendant's motion for summary judgment, this litigation may well have terminated, or, at least, a material issue for trial would have surfaced. Summary judgment should not be denied on the mere assertions of counsel, or counsel's desire for discovery, or conclusionary pleadings that genuine issues of fact exist.[2] *See Crawford v. United States, supra,* 3 Cl.Ct. at 328–329.

Plaintiff, in its opposition brief, agrees, in general, with the facts stated by defendant and set forth, *supra.* However, plaintiff states that several additional facts are relevant, and are unknown to plaintiff, since no discovery has taken place. Plaintiff cites five relevant areas it would explore on discovery.

First, plaintiff states the nature of the mistake must be addressed. This has already been done. It is agreed that the mistake was not mathematical or clerical, but rather resulted from mishandling of Amendment No. 2. While this mistake may have resulted in an understated bid, it was a unilateral mistake by plaintiff that would not ordinarily be within the pale of constructive notice to the contracting officer. The plaintiff had acknowledged receipt of Amendment No. 2 so there was no basis for any suspicion that the plaintiff did not consider it in its bid proposal. If unusual circumstances put it within this pale, then it would be incumbent on plaintiff to inform the court of these facts in its opposition brief by way of affidavit or evidentiary material. Plaintiff has not done this.

Second, plaintiff states, it "intends to prove that the variation among bids was, by itself, not enough to put plaintiff on notice of the seriousness or magnitude of the error." This is a matter solely within plaintiff's knowledge and discovery would most probably not aid plaintiff. The disparity among the bids was the only basis the contracting officer had for suspecting a mistake in bid, and yet, plaintiff claims the variation among bid was not enough to put plaintiff on notice. No affidavit has been presented by plaintiff on this matter. An affidavit by an official of plaintiff certainly could have addressed this point in plaintiff's opposition brief and explained why

---

**2.** Plaintiff's generalized, unspecific and cursory assertions that the contracting officer failed to perform in a proper manner his duty of submitting to plaintiff an adequate verification request are insufficient to overcome the presumption that public officials properly perform their official duties and properly perform their official responsibilities. *Sun Oil Co. v. United States,* 215 Ct.Cl. 716, 746, 572 F.2d 786, 805 (1978), and it takes "well-nigh irrefragable proof" to overcome this presumption. *Knotts v. United States,* 128 Ct.Cl. 489, 492, 121 F.Supp. 630, 631 (1954). The materials presently before the court are supportive of this presumption. Plaintiff's pleadings and opposition brief are silent as to what factors exist which rebut this presumption and thus create a disputed factual issue requiring trial.

greater disparity between plaintiff's bid and the other two bids caused plaintiff no concern but less disparity between plaintiff's bid and the government's estimate may have caused some concern.

Third, plaintiff states it "intends to prove, with the aid of discovery, that the government's estimate was substantially in excess of plaintiff's bid, a fact that would have been of considerably more significance to plaintiff than the discrepancy between plaintiff's bid and those of other bids." This is a matter that has been discussed previously in this opinion. Plaintiff never sought to obtain the government's estimate. Further, it has not been shown by plaintiff, by affidavit or otherwise, how or why the government's estimate would have been significant in correcting the careless mishandling of Amendment No. 2, the mistake on which plaintiff relies.[3]

Fourth, plaintiff advises it "intends to present evidence on the basis for the Government's estimate, which bears upon the contracting officer's constructive knowledge of a bid mistake." Plaintiff nowhere, by affidavit or otherwise, states what that evidence is or how it is material to the issue in question.

Fifth, plaintiff advises it would "prove what its bid would have been, had it been based upon the understanding that the contractor was responsible for minor repairs." These are clearly matters within the knowledge of plaintiff and, if plaintiff felt it to be material in defeating defendant's motion for summary judgment, it should have submitted it in affidavit form in support of its opposition to said motion. More important-

ly, this matter does not appear relevant to the assertion by plaintiff that the contracting officer had constructive knowledge of its bid mistake.

■ In this case, the contracting officer put plaintiff on notice of the only factor he was aware of relative to a possible error in plaintiff's bid, *i.e.*, disparity between other bids and the government's estimate. No other factors which could reasonably have raised the presumption of error in the mind of the contracting officer have surfaced in this case. The approach the court has taken in this case strikes an appropriate balance, it is believed, between the dual concerns of overreaching of a contractor by a contracting officer on one hand, which would justify reformation, and the need to avoid making it necessary for the contracting officer "to act as a nursemaid for bidders" on the other hand, which justifies rejection of a reformation claim. *See Aydin Corp. v. United States, supra,* 229 Ct.Cl. at 317, 669 F.2d at 687. In this case, on the one hand, no overreaching by the contracting officer has been shown nor have facts been alleged which, if proved, would constitute overreaching. This is the critical factor in post-award bid mistake cases. *See Ruggiero v. United States, supra,* 190 Ct.Cl. at 335, 420 F.2d at 713. On the other hand, to deny defendant's motion for summary judgment on the basis of the opposition brief filed by plaintiff would be to act as nursemaid for contractors in bid mistake cases.[4] The verification request, if taken seriously by plaintiff, most probably would have led to discovery of its careless

---

**3.** While the careless or negligent act of plaintiff in handling Amendment No. 2 would not, *per se,* preclude the granting of relief in this case, *see Chris Berg, Inc. v. United States,* 192 Ct.Cl. 176, 182, 426 F.2d 314, 317 (1970), it has some significance in determining whether constructive knowledge of a bid mistake should be imputed to the contracting officer where the carelessness that led to the mistake is such that to impute knowledge of it to the contracting officer would be most unreasonable and unrealistic.

**4.** Plaintiff argues that failure to grant it relief in this case will result in harm to plaintiff. This is generally the case when relief is denied in such

cases. Plaintiff does not plead nor argue in its opposition brief that the doctrine of unconscionability is for application, in any event, on the facts of this case. In the court's view, this is not a case for the application of said doctrine. The mistake in bid must be extreme to support a finding of unconscionability. *See generally,* Hagberg, *Mistake In Bid, Including New Procedures Under Contract Disputes Act of 1978,* 13 Pub. Contract L.J. 257, 289, 300–301 (1983). As to the range of bids in this case and percentage relationships among them, *see Wender Presses, Inc. v. United States,* 170 Ct.Cl. 483, 488, 343 F.2d 961, 963–964 (1965).

mishandling of Amendment No. 2. *See* plaintiff's letter of November 8, 1982, explaining the mistake which is quoted in full, *supra.* The risk of failing to take said request seriously, under the circumstances of this case, properly should rest on plaintiff. *See Rixon Electronics, Inc. v. United States,* 210 Ct.Cl. 309, 320, 536 F.2d 1345, 1351 (1976).

For reasons discussed above, defendant's motion for summary judgment is granted, with plaintiff's complaint to be dismissed.