Alan SPARKS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 96–143C.

United States Court of Federal Claims.

Sept. 24, 1996.

As Modified Oct. 18, 1996.

John J. Fausti, Washington, D.C., for plaintiff. Lori M. Lee and The Law Offices of John J. Fausti, of counsel.

Elizabeth A. Rinaldo, Department of Justice, Washington, D.C., with whom was Assistant Attorney General Frank W. Hunger, for defendant. David M. Cohen, Director; Joseph A. Kijewski, Assistant Director; and Delores Thompson, Defense Logistics Agency, of counsel.

## OPINION AND ORDER

FUTEY, Judge.

This case is presently before the court on: (1) plaintiff's complaint; (2) plaintiff's motion for an order directing the contracting officer to issue a decision; (3) the parties' briefs regarding the contract issue; and (4) plaintiff's motion requesting that the court decide his motion seeking a contracting officer's final decision. Defendant opposes plaintiff's motion for an order directing the contracting officer to issue a decision and argues that plaintiff has not adequately identified a contract to which his claim relates.

### Factual Background

For approximately ten years, plaintiff purchased surplus aircraft parts, including three AH–1 Cobra helicopter fuselages, from the Defense Logistics Agency (DLA) and DLA's Defense Reutilization & Marketing Service (DRMS). Plaintiff claims that defendant seized the three Cobra fuselages, which were in transit to plaintiff's facility, in September 1994. Thereafter, defendant searched plaintiff's facility and, in March 1995, seized certain additional aircraft parts that had been sold to plaintiff. Defendant allegedly took these actions after reviewing the demilitarization procedures that were used regarding the seized parts. Plaintiff alleges that defendant has not compensated him for the seizures. In addition, plaintiff maintains that defendant's list of inventory seized from plaintiff is inaccurate and contends that many of the parts seized have a commercial application, are commercially-available, and remain in the possession of other private citizens.

On September 27, 1995, plaintiff submitted a $6,013,207 certified monetary claim to DLA and DRMS seeking damages for the seizure of his property. Plaintiff's claim was submitted to the various DRMS sales contracting officers who administered each of the sales to plaintiff. According to defendant, DLA delegated adjudication of plaintiff's claim to DRMS. To date, defendant has not issued a contracting officer's final decision regarding plaintiff's claim. Plaintiff alleges that defendant has violated the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1994) (CDA), and FAR § 33.211(c)(2) (1995), in failing, within sixty days of the receipt of plaintiff's claim, to issue such a decision or to notify plaintiff of the date by which a decision would be issued.

Plaintiff filed his complaint in this court on March 13, 1996. In the complaint, plaintiff requests that the court declare that defendant "has breached its obligation of good faith and fair dealing by failing to render a decision in this matter within the statutorily specified time or to commit to a date by which a decision shall be rendered; and [to issue] an order directing defendant to issue a final decision." As an alternative to the requested declaratory relief, plaintiff seeks monetary damages in the amount of $20,774,-612, plus interest and costs, under either of two theories. First, plaintiff claims that defendant's seizure of certain military surplus parts, allegedly sold to him by defendant, constitutes a breach of contract. Plaintiff seeks recovery of the fair market value of the seized parts. Second, plaintiff argues that defendant's seizure of the parts amounts to a taking under the Fifth Amendment, entitling him to just compensation.

On March 21, 1996, plaintiff filed a motion for leave to file an order directing the contracting officer to issue a decision. Plaintiff filed that motion, with the court's leave, on April 10, 1996. In support of his motion, plaintiff argues that § 605(c)(4), grants this court, as "the tribunal concerned," the authority to order a contracting officer to issue a final decision on a claim where there has been undue delay in the issuance of such a decision. Plaintiff claims undue delay in the present case. In addition, plaintiff alleges that the contracting officer "has already is-

sued his final decision on plaintiff's claim [but] defendant has failed to provide plaintiff with a copy of the same." In defendant's opposition to plaintiff's motion, which also was filed on April 10, 1996, defendant specifically denies this allegation. Defendant further asserts that: (1) if the issue before the court is a contract issue, the contracting officer has been divested of authority to issue a decision on plaintiff's claim; (2) a contracting officer's decision would serve no useful purpose; and (3) a contracting officer's decision is not required because plaintiff has not related his claim to a contract.

On May 14, 1996, following a conference with the parties, the court issued an order directing the parties to "brief the issue of existence of a contract between plaintiff and defendant." Defendant and plaintiff submitted their briefs on June 4, 1996, and June 27, 1996, respectively. On August 28, 1996, plaintiff filed a motion requesting that the court decide his motion seeking a contracting officer's decision. That motion essentially restates the factual and procedural background of the case, noting the time that has passed since plaintiff first filed his claim with defendant on September 27, 1995. In addition, plaintiff alleges that, while defendant's actions have forced him out of his business, other private citizens continue to possess and profit from their Cobra helicopters. Plaintiff asserts that his business cannot survive under the present circumstances. He therefore requests that the court "take this matter under advisement" and decide his motion for an order directing the contracting officer to issue a decision. The court then held another conference with the parties on September 12, 1996, the details of which are set out below. Further oral argument is deemed unnecessary.

### Discussion

Before the court may address the issues raised in plaintiff's complaint or motions, it first must determine its jurisdiction and resolve the threshold question of the existence of a contract between plaintiff and defendant.

### A. The Contract Issue

The CDA mandates that claims by a contractor "relating to a contract" with the government must first be decided by a contracting officer before suit can be brought in this court. Section 605(a). The contracting officer is required, within sixty days of receiving a claim, to either issue a decision or notify the contractor of a date by which a decision will be issued. Section 605(c)(2)(A)–(B). Failure to do either of the aforementioned is treated as a deemed denial of the claim by the contracting officer after which the contractor may institute an appeal or suit on the claim. Section 605(c)(5).

In the present case, defendant states that plaintiff's complaint refers to Invitation for Bid (IFB) numbers not contract numbers. Defendant asserts that plaintiff therefore has failed to identify any particular contract to which his claim relates, as is required by § 605(a). Defendant, however, fails to offer, and the court cannot find, any cases to refute plaintiff's contention that his complaint adequately identifies forty-one separate sales contracts. In that regard, plaintiff argues that the IFB numbers set out in the complaint became designation numbers assigned to the contracts that defendant awarded to plaintiff. Plaintiff also notes that each sale by DRMS to plaintiff expressly incorporates the DRMS's Sales by Reference pamphlet, which sets out the procedures governing DRMS surplus property auctions. Part 2 of the pamphlet states that disputes arising from contracts awarded based upon such sales are subject to the CDA.

In general, plaintiff asserts that IFB numbers become contract numbers when additional digits representing a particular bidder are added onto the end of the IFB number. The resulting contract number then becomes unique to the specific bidder whose number has been added onto the IFB number. Caselaw supports plaintiff's position. *Carrier Corp. v. United States*, 6 Cl.Ct. 169, 171 (1984) (noting that the IFB number was the same as the contract number); *Sofarelli Assocs., Inc. v. United States*, 1 Cl.Ct. 241, 242 (1982) (showing that the thirteen-digit IFB number differed from the contract number by only one letter), *appeal dismissed*, 716 F.2d 1395 (Fed.Cir.1983); *see also Appeals of Harvex Trading Co.*, 92–3 B.C.A. (CCH)

¶ 25,027, at 124,748, 124,750, 1992 WL 91961 (ASBCA) (demonstrating that the contract number was the IFB number with an additional three-digits). Moreover, although defendant has been aware of the present dispute since plaintiff submitted his claim to defendant in September 1995, defendant has failed to show that it ever questioned either the existence of plaintiff's alleged contracts or the identity of the particular contracts involved in plaintiff's claim prior to the filing of his complaint in this court.

In *Appeal of Allied Production Management, Inc.*, 92–1 B.C.A. (CCH) ¶ 24,585, 1991 WL 258345 (DOTBCA), the Department of Transportation Board of Contract Appeals (DOTBCA) took a dim view of such behavior and implied that such delayed challenges by the defendant were simply litigation-oriented tactics. More specifically, the DOTBCA stated that an obvious variance in party identification that had previously gone unnoticed was insufficient to support a request for dismissal, stating: "if the Coast Guard had any problem in discerning and identifying who was its contractor, it was incumbent upon the Coast Guard to clarify the situation promptly, not wait until litigation commenced and raise the discrepancy to avoid liability.... [B]y its actions, [the Coast Guard] acquiesced in the appellative confusion and waived any effects which might flow from the misnomer." *Id.* at 122,679–80. The DOTBCA further noted that a pleading could withstand a request for dismissal as long as the name used in the pleading "could reasonably be construed as an adequate identification" of the party. *Id.* at 122,680.

Similarly, in *Appeal of West State, Inc.*, 96–1 B.C.A. (CCH) ¶ 28,268, 1996 WL 165547 (DOTBCA), the DOTBCA denied a dismissal request based upon the fact that the notice of appeal omitted a digit from the contract number.[1] In *West State,* the DOTBCA found that, despite the omission, the defendant was always fully aware of which contract was involved in the appeal. *Id.* at 141,146. In that regard, the DOTBCA noted that the defendant had: (1) assembled and filed an appeal file; (2) participated in the pleading process; (3) joined in requests to suspend proceedings to permit negotiations with the contractor; and (4) conducted such negotiations. *Id.* at 141,144–46. Further, the DOTBCA pointed out that the defendant did not advance this argument until the deadline for filing suit in the United States Court of Federal Claims had expired. *Id.* at 141,146 & n. 8. Based upon these factors, the DOTBCA concluded that defendant, by waiting until that point in the process to raise an "absolutely inconsequential" issue, was not acting in good faith. *Id.* at 141,146.

The defendant's actions in *Allied Production* and *West State* are analogous to defendant's actions in the present case, especially given the amount of time this claim has been in defendant's possession and the fact that nobody who came in contact with plaintiff's claim had previously questioned the existence of a contract between plaintiff and defendant. In fact, defendant itself has referred to the documents at issue as contracts. To demonstrate that point, plaintiff has offered correspondence from various employees of defendant that not only acknowledge the existence of contracts between plaintiff and defendant but also make reference to particular contracts at issue in the present case. For example, plaintiff received a letter from the Chief of DLA's DRMS sales office in acknowledgement of plaintiff's claim stating that the claim consisted of "some [forty-one] sales contracts."[2] Other DLA and government documents also imply that plaintiff purchased the Cobra components under valid contracts with defendant.[3] In addition, the contracting officer reviewing plaintiff's claim had no problem identifying the contracts at issue using the IFB numbers that plaintiff

---

1. In a slightly different context also involving contract identification in the disputes process, the DOTBCA required that a contracting officer's decision identify the contract adequately in order "to ascertain the issues in dispute and the nature of the claim." *In re World Computer Systems, Inc.*, 95–1 B.C.A. (CCH) ¶ 27,399 (DOTBCA), at 136,602, 1995 WL 18382. The DOTBCA further stated in *World Computer* that it "perceive[d] no legal reason why identification may not be by adequate reference." *Id.*

2. Defendant's Contract Brief, Ex. 1 (Def.'s Br.).

3. *Id.*, Ex. 8; Plaintiff's Contract Brief, Exs. 8, 9 (Pl.'s Br.).

provided.[4] Moreover, at least one "Notice of Award, Statement, and Release Document" shows that the contract number resulting from a DRMS sale to plaintiff was simply the IFB number with an additional three digits added onto the end.[5]

Plaintiff has adequately identified forty-one contracts to which his claim relates. The court notes, however, that it lacks jurisdiction to consider any contract claims at this time relating to the "other various sales awarded prior to 1993" that plaintiff refers to in his complaint. That statement is simply too vague to identify to the court or defendant which contracts may be involved.

### B. Complaint and Motion for Order Directing a Contracting Officer's Decision

It is undisputed that § 605(c)(4) grants this court, as "the tribunal concerned," the authority to order a contracting officer to issue a final decision on a claim where there has been undue delay in the issuance of such a decision. Plaintiff claims undue delay in the present case. Defendant responds that, if the issue before the court is a contract issue, the contracting officer has been divested of jurisdiction to issue a final decision upon plaintiff's claim. Defendant further notes that, based upon plaintiff's representations, he instead could have proceeded under the deemed denial provision of § 605(c)(5).

■ Although the court invoked § 605(c)(4) in ordering a contracting officer to issue a final decision in *Alaska Pulp Corp. v. United States*, 34 Fed.Cl. 100 (1995), that case is distinguishable from the present one. In *Alaska Pulp*, the claim before the contracting officer was not the same as the claim before the court. *Id.* at 103–04. Here, however, the claim before the contracting officer and the claim before the court are identical. Indeed, both claims involve alleged monetary damages upon the same issues. "Once a claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation." *Sharman Co. v. United States*, 2 F.3d 1564, 1571 (Fed.Cir.1993); *see*

*also Case, Inc. v. United States*, 88 F.3d 1004, 1009 (Fed.Cir.1996). This grant of exclusive authority to the Department of Justice, which is based upon 28 U.S.C. § 516 (1994), "divests the contracting officer of his authority to issue a final decision on the claim." *Sharman*, 2 F.3d at 1571; *see also Case*, 88 F.3d at 1009. The filing of plaintiff's complaint with the court divested the contracting officer of the authority to issue a decision on his claim. *Cincinnati Elecs. Corp. v. United States*, 32 Fed.Cl. 496, 500 (1994); *Sipco Servs. & Marine Inc. v. United States*, 30 Fed.Cl. 478, 485 (1994); *Durable Metal Prods., Inc. v. United States*, 21 Cl.Ct. 41, 46 (1990). Thus, before the court could take any action pursuant to § 605(c)(4), plaintiff would have to amend his complaint to delete his request for monetary damages. The court then would be required to rule on the undue delay question prior to deciding whether to direct the contracting officer to issue a decision.

■ In light of the above-mentioned considerations, it was agreed at the September 12, 1996, conference that such proceedings would only further delay resolution of the present dispute. The court therefore suggested, and the parties agreed, to proceed in accordance with § 605(c)(5). Section 605(c)(5) provides:

Any failure by the contracting officer to issue a decision on a contract claim within the period required [sixty days] will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this chapter. However, in the event an appeal or suit is commenced in the absence of a prior decision by the contracting officer, the tribunal concerned may, *at its option*, stay the proceedings to obtain a decision on the claim by the contracting officer.

(Emphasis added). Because the contracting officer failed to issue or give a date certain for a decision on plaintiff's claim within sixty days after receipt thereof, the court concludes that the claim has been deemed denied under § 605(c)(5). Believing that a de-

---

4. Pl.'s Br., Ex. 2.

5. Def.'s Br., Ex. 2.

cision by the contracting officer would be beneficial, the court will stay proceedings in this case until after the issuance of such a decision, which shall be no later than sixty days from the filing of this opinion and order. *Wallace O'Connor Int'l, Ltd. v. United States,* 23 Cl.Ct. 754, 758 (1991).

### Conclusion

For the foregoing reasons, the court concludes that plaintiff's complaint adequately identifies forty-one contracts with defendant to which plaintiff's claim relates. The court possesses jurisdiction over those contracts but lacks jurisdiction to consider any contract claims at this time involving the "other various sales awarded prior to 1993" referred to in plaintiff's complaint.[6] The court further determines that plaintiff's present claim has been deemed denied by the contracting officer under § 605(c)(5). The court, however, defers ruling on the merits of the case until the contracting officer has rendered a decision on plaintiff's claim. Accordingly, the proceedings are hereby stayed and the contracting officer is directed to render a final decision on plaintiff's claim within sixty days of this opinion and order.[7]

IT IS SO ORDERED.

---

6. This determination does not affect the court's jurisdiction over plaintiff's claim for an alleged taking under the Fifth Amendment to the United States Constitution.

7. Plaintiff's motion for an order directing the contracting officer to issue a decision and plaintiff's motion requesting that the court decide his motion seeking a contracting officer's final decision are moot.