**UNITED PARTITION SYSTEMS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–1242C.

United States Court of Federal Claims.

Jan. 28, 2004.

---

Paul F. Dauer, Sacramento, California, for plaintiff.

Cristina C. Ashworth, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Assistant Attorney General Peter D. Kiesler, David M. Cohen, Director, Commercial Litigation Branch, and Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

This contract case is before the Court on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). The case has a convoluted procedural history, and the government's motion requires that this history be set against the complexity of the Contract Disputes Act's claim requirements, which are jurisdictional in this Court.[1]

Plaintiff, United Partition Systems, Inc. ("United Partition") seeks payment under a contract pursuant to which United Partition was to provide the Department of the Air Force, 56th Contracting Squadron at Luke Air Force Base ("Air Force") with a prefabricated building. United Partition undertook to perform under the contract, but the Air Force rejected United Partition's performance as defective. United Partition filed a claim with the Air Force's contracting officer, but at the agency level the Air Force denied that United Partition was due anything under the contract and instead claimed that United Partition was obliged to pay for removing United Partition's allegedly flawed construction. United Partition took an appeal to the Armed Services Board of Contract Appeals ("ASBCA" or "Board"), where the key question was whether the Air Force's contracting officer had authority to act on the claim. The Board ruled that the Air Force's contracting officer did not have such power and that United Partition's claim should be transferred to a contracting officer with the General Services Administration ("GSA"). As the transfer was being made, United Partition filed the present case in this Court to protect its rights in light of the CDA's one-year statute of limitations, which was about to expire based on the issuance date of the Air Force's contracting officer's decision. Subsequently, GSA's contracting officer issued a decision which was consistent

in all respects with that previously issued by the Air Force's contracting officer.

Given the resulting procedural tangle, it comes as no surprise that the government argues this Court lacks subject matter jurisdiction. The government contends that, at the time United Partition filed its complaint, a contracting officer with authority to issue a proper final decision on United Partition's claim had not received such claim and had not issued a final decision. The government's motion has been fully briefed, a hearing was conducted on January 9, 2004, and supplemental briefs have been submitted. For the reasons set out below, the Court holds that (1) two separate contracting officers had partial authority in this instance, one with the Air Force and the other at GSA, (2) United Partition's claim was properly submitted to, and received by, the Air Force's contracting officer, (3) the Court has jurisdiction over United Partition's claim under the deemed-denied doctrine, and (4) the Court does not have jurisdiction over United Partition's challenge to the Air Force's demand for payment against United Partition because the Air Force's contracting officer lacked authority to issue such a demand. Although the Court denies the government's motion, as a prudential matter to guard against further jurisdictional uncertainty, it grants United Partition leave to file a supplemental pleading addressing events that have transpired since the filing of its original complaint.

## BACKGROUND[2]

### A. The Contract And The Order Under The Contract

United Partition entered into a contract with GSA in July 1999 for the provision of prefabricated buildings to federal agencies during a five-year term extending through June 30, 2004. Compl. ¶ 3. The contract was a Multiple Award Schedule ("MAS") contract—a part of the Federal Supply Schedule ("FSS") program through which federal

---

1. The Contract Disputes Act of 1978, as amended ("CDA"), is codified at 41 U.S.C. §§ 601–613.

2. Unless otherwise noted, the facts set out are undisputed. The recitation of facts is provided

solely for purposes of providing a background for analysis of the pending motion and does not constitute findings of fact by the Court.

agencies may acquire a variety of commonly used supplies and services through simplified procedures and at rates that have been previously negotiated by GSA. *See* Federal Acquisition Regulations ("FAR") [48 C.F.R.] § 8.401(a).[3] The MAS contract was signed by a GSA contracting officer and, by its terms, was to be administered by GSA. Compl. Ex. 1 at 1A.

When a federal agency, in this case the Air Force, decided that it wished to purchase the items covered by the contract, *i.e.,* prefabricated buildings, the agency would issue a Delivery Order ("DO"). Compl. Ex. 1 at 8; FAR § 52.216–18 ("Ordering"). On March 20, 2000, the Air Force issued a solicitation requesting price quotes from all holders of FSS–MAS contracts similar to United Partition's for the design, manufacture, and construction of a one-story modular building at Luke Air Force Base ("Luke AFB"). Compl. ¶ 4 and Ex. 2. On June 5, 2000, the Air Force chose to purchase from United Partition and issued DO No. F02604–00–F–A033, ordering the building for a price of $108,404. Compl. ¶ 5 and Ex. 3. The building was to be delivered on or before July 31, 2000, and thereafter United Partition's workers were to construct and install the building on-site at Luke AFB. Compl. ¶¶ 21, 26.

The building was delivered, and through the first part of August 2000 United Partition constructed the building and installed most of the components. Eventually, disputes arose between United Partition and the Air Force as to who was responsible for preparing the construction site as well as about whether the materials United Partition used met specifications purportedly included in the Air Force's DO. Nearly a year later, on September 14, 2001, the Air Force issued a "Modification" of the DO terminating the order for default and indicating that the Air

Force would pay United Partition nothing. Compl. ¶ 50 and Ex. 24.

### B. United Partition's Claim, The Air Force's Final Decision, And Subsequent Procedural Developments

On January 25, 2002, United Partition's attorney filed a formal written claim requesting payment of $108,000 for the work that United Partition had completed under the contract. Compl. Ex. 4. United Partition's claim was mailed to the Air Force's then-assigned contracting officer at Luke AFB[4] and included a cover letter from United Partition's attorney that requested a timely decision:

> Enclosed please find United Partition Systems, Inc.'s claim [p]ursuant to 41 U.S.C. section 605. As required by law, we request that the contracting officer issue a written decision on this claim within 60 days of receipt. Additionally, if you require any additional information or materials to completely and thoroughly analyze this claim, please do not hesitate to contact our office and we will ensure that you receive the requested information.

Compl. Ex. 4. United Partition's request for a contracting officer's decision was reiterated in the final paragraph of the claim. *Id.* at 7. The claim also included a certification signed by United Partition's Vice President of Operations. *Id.* at 8. The core of United Partition's claim centered on the allegation that, but for the Air Force's actions and inactions during the course of the project, United Partition would have been able to perform successfully. *Id.* at 6–7, ¶¶ 16–19. Additionally, the claim reflected a request for an equitable adjustment for a suspension of work issued by the Air Force and payment for materials already supplied and labor already performed. *Id.* at 2–3, ¶¶ 6, 9.

The Air Force received the claim on January 28, 2002, and, after two deferrals,[5] on

---

3. The Federal Acquisition Regulations are codified in title 48 of the Code of Federal Regulations ("C.F.R."). Citation to title 48 will be omitted in each subsequent reference to the FAR.

4. United Partition avers that the Air Force assigned no fewer than eight different contracting officers to the project over its lifetime. Compl. ¶¶ 33, 38, 48. The government has asserted that the number was, at most, two, and that the other

persons were assistants to the contracting officer. Hr'g Tr. at 8. In all events, the parties agree that the proper Air Force contracting officer in fact received United Partition's claim.

5. On March 20, 2002, an Air Force contracting officer sent a notice to United Partition that the Air Force's final decision would be issued on or before April 30, 2002. Compl. Ex. 5. On April 23, 2002, that contracting officer sent a second

May 20, 2002, a different Air Force contracting officer issued to United Partition a "Contracting Officer's Final Decision and Payment Demand" denying United Partition's claim and asserting a demand against United Partition "for excess reprocurement costs in the amount of $10,987.50." Compl. Ex. 7 at 1. The counter-claim for reprocurement costs was purportedly issued pursuant to FAR § 32.610 and was based on expenses allegedly incurred in the removal of United Partition's "noncompliant facility" and "three existing modular buildings referred to in Paragraph 17 of the [statement of work that accompanied the Air Force's initial solicitation]." Compl. Ex. 7 at 2.

United Partition appealed the Air Force's contracting officer's denial and counter-claim to the ASBCA on August 23, 2002. Compl. ¶ 11. The Board dismissed these appeals for lack of jurisdiction on May 2, 2003. *United Partition Sys., Inc.,* ASBCA Nos. 53915, 53916, 03–2 BCA ¶ 32,264, 2003 WL 2012838 (2003). The dismissal was based upon the Board's determination that the Air Force's contracting officer had no authority to issue its final decision under the Contract's Termination for Default and Disputes clauses and FAR §§ 8.405–5 and 8.405–7. *Id.* at pp. 159,-596–97. Specifically, the ASBCA explained that

> pursuant to the contract and regulations, the Air Force CO should have referred the matter to GSA's CO for decision. Only a GSA CO responsible for the contract could issue a valid decision on the disputed default issues that is subject to appeal under the CDA.... Under the circumstances, the Air Force CO was [also] not entitled to issue a decision assessing excess reprocurement costs against [United Partition].

*Id.* at 159,597 (internal citations omitted).

On May 20, 2003, United Partition filed its jurisdictionally protective action with this Court. On May 25, 2003, the Air Force's contracting officer forwarded United Partition's claim to a GSA contracting officer.

Mot. at 7 and Ex. B. GSA's contracting officer received the claim on June 3 and requested additional information from United Partition on July 3. Mot. at 7 and Ex. D.

On July 21, 2003, the government filed an unopposed motion for an extension of time to respond to the complaint, in which it recited that

> Plaintiff's counsel has represented that United Partition ... will soon file a motion to stay this case, to which the government is unopposed. The purpose of United Partition's stay request will be to allow the parties to await a final decision from the General Services Administration ("GSA") contracting officer, following a decision from the Armed Services Board of Contract Appeals that found the GSA contracting officer the appropriate individual to decide plaintiff's claim.

Defendant's Unopposed Motion For Enlargement Of Time To Respond To Complaint at 1 (filed July 21, 2003). Thereafter, on September 8, 2003, United Partition filed its unopposed motion to stay proceedings, and, on September 26, 2003, this Court granted both of the unopposed motions, *i.e.,* that by the government for an enlargement of time to respond to the complaint and that by United Partition to stay proceedings. On October 10, 2003, GSA's contracting officer issued a final decision denying United Partition's claim and asserting a counter-claim for reprocurement expenses in the amount of $10,987.50. Mot. at 7–8 and Ex. A.

The government's present motion to dismiss is premised upon the prerequisites for this Court's jurisdiction embedded in provisions of the Contract Disputes Act. As the government would have it, first, because the Air Force's contracting officer who denied United Partition's claim did not have authority to render a proper final decision, as held by the ASBCA, this Court did not have jurisdiction at the time United Partition filed its complaint. Second, because GSA's contract-

---

notice to United Partition indicating that the Air Force's final decision would be further delayed until sometime on or before May 30, 2002. Compl. Ex. 6. The Court does not need to determine whether the Air Force's contracting officer had authority to issue such extension notices

pursuant to 41 U.S.C. § 605(c)(2)(B). Even assuming that the extension notices were proper, no valid contracting officer's decision was issued on May 30, 2002, and thus United Partition's claim would have been deemed denied on that date—well before the complaint was filed.

ing officer did not receive United Partition's claim until June 3, 2003, *i.e.,* after United Partition had filed its complaint in this Court, the government contends that the Court cannot base subject matter jurisdiction on GSA's contracting officer's denial of United Partition's claim and concurrent demand against United Partition.

In countering these arguments, United Partition contends that because it had submitted its claim to the government and no appropriate action had been taken on the claim by the time it filed its complaint, the Court has jurisdiction via the deemed-denied doctrine. Opp. at 8–10. United Partition also argues that, notwithstanding the ASBCA's decision, the Court has jurisdiction over the Air Force's counter-claim. Opp. at 5–6.

## ANALYSIS

### A. Standard For Decision

■■■ The jurisdiction of a federal court must be established as a threshold matter before the Court may proceed to the merits of any action. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). The party who asserts jurisdiction, *i.e.,* United Partition in this instance, bears the burden of proving that the Court has jurisdiction over the subject matter of its complaint. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998); *Ware v. United States,* 57 Fed.Cl. 782, 784 (2003); *Clearwater Constructors, Inc. v. United States,* 56 Fed.Cl. 303, 307 (2003). In ruling on a motion to dismiss, the Court must construe the allegations of the complaint in a light favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Vanalco, Inc. v. United States,* 48 Fed.Cl. 68, 73 (2000). Additionally, when the underlying facts establishing jurisdiction are put in question, the Court may look at facts beyond those included on the face of the pleadings. *McNutt,* 298 U.S.

at 189, 56 S.Ct. 780; *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1584 (Fed.Cir. 1993); *Ware,* 57 Fed.Cl. at 783 n. 1; *Association of Merger Dealers, LLC v. Tosco Corp.,* 167 F.Supp.2d 65, 69 (D.D.C.2001).

### B. Jurisdiction Over The Claim And The Air Force's Counter-Claim

#### 1. Prerequisites for jurisdiction under the CDA.

United Partition has invoked the Court's jurisdiction pursuant to the CDA. With respect to suits arising from the CDA, the Tucker Act grants this Court jurisdiction "to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978." 28 U.S.C. § 1491(a)(2).[6] Paragraph 609(a)(1) of the CDA states that "in lieu of appealing the decision of the contracting officer under section 605 of [title 41] to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary." Section 605 addresses the issuance of final decisions by contracting officers on claims submitted by contractors, and, as a general rule, "[a] contracting officer's final decision is a jurisdictional pre-requisite to filing suit in this court." *Buse Timber & Sales, Inc. v. United States,* 45 Fed.Cl. 258, 265 (1999). However, as specified in Paragraph 605(c)(5), if a contracting officer fails to issue a final decision in a timely manner, the contractor's claim will be "deemed" denied, and the contractor may seek relief from such deemed denial. *See Case, Inc. v. United States,* 88 F.3d 1004, 1008–09 (Fed.Cir.1996); *Southern Cal. Edison v. United States,* 58 Fed.Cl. 313, 320 (2003); *Claude E. Atkins Entrs. v. United States,* 27 Fed.Cl. 142, 143–44 (1992). *See also Grant Communications, Inc. v. Social Security Administration,* GSBCA No. 14862–SSA, 99–1 BCA ¶ 30,281 at p. 149,782, 1999 WL 160010 (1999) (stating that a contractor's claim under an FSS contract was

---

**6.** Section 10(a)(1) of the CDA is codified at 41 U.S.C. § 609(a)(1). *See* 28 U.S.C.A. § 1491 note (West 2004).

deemed denied for purposes of 41 U.S.C. § 605(c)(5) and that the contractor "may file an appeal from this deemed denial"). Accordingly, the Court must determine whether, in the instant case, the government failed to issue a timely and proper final decision and, thus, whether United Partition's claim should be deemed denied.

The language of 41 U.S.C. § 605(c)(2) provides that "[a] contracting officer shall, within sixty days of receipt of a submitted certified claim over $100,000" either issue a final decision or notify the contractor of the date by which a decision will be issued. As United Partition would have it, the relevant sixty-day period would have commenced when the Air Force's contracting officer received United Partition's claim and subsequently would have expired on March 29, 2002. The government has argued that the sixty-day time period after which United Partition's claim could be "deemed" denied did not begin to run until United Partition's claim was received by GSA's contracting officer, i.e., June 3, 2003. Mot. at 12–13. In support of this contention, the government argues that "[a] claim is 'submitted for a decision' when it is *received* by the appropriate contracting officer." *Id.* at 11. Accordingly, the government asserts, the earliest possible date for a deemed denial upon which United Partition could bring suit in this Court was August 1, 2003. *Id.* at 13. Thus, resolution of this issue requires a determination of when United Partition's claim was "received" by a contracting officer with authority to act upon it.

### 2. *Contracting officers' concurrent authority.*

Unlike in most CDA cases, under the schedule contract between United Partition on the one hand and the Air Force and GSA on the other, multiple contracting officers in different agencies possessed simultaneous authority to take different actions in relation to the contract. The contract contains two "Disputes" clauses—the clause set forth at FAR § 52.233–1, which is incorporated by explicit reference, Compl. Ex. 1 at 69, and FAR § 8.405–7, which is applicable to all FSS contracts, *see* FAR § 8.402. The Disputes clause at FAR § 52.233–1 is generally applicable to many federal government contracts and seems to be drawn from a paradigm in which only one contracting officer is responsible for a given contract. The provisions of FAR § 8.405–7, however, specifically recognize the dichotomy that exists in schedule contracts in which the ordering office (*i.e.*, the Air Force) and the schedule contracting office (*i.e.*, GSA) each has a contracting officer responsible for some aspect of the contract and give the schedule contracting office primacy over the ordering office for resolving disputes. Specifically, FAR § 8.405–7 provides, "[t]he ordering office shall refer all unresolved disputes under orders to the schedule contracting office for action under the Disputes clause of the contract."[7]

The contract also contains three "Default" clauses—clause I–FSS–249–B, Compl. Ex. 1 at 39, the clause set forth at FAR § 52.249–10, which is incorporated by reference, *id.* at 69, and FAR § 8.405–5, which is generally applicable to FSS schedule contracts, *see* FAR § 8.402. Similarly to the "Disputes" clause at FAR § 52.233–1, the "Default" clause at FAR § 52.249–10 is a generally applicable clause used in many contracts and envisions one contracting officer with authority. By contrast, I–FSS–249–B and FAR § 8.405–5 specifically account for the dual roles of the ordering and schedule contracting offices. Clause I–FSS–249–B provides:

> In addition to any other clause contained herein related to termination, the following is applicable to orders placed under Federal Supply Schedule contracts.
>
> Any ordering office may, with respect to any one or more delivery orders placed

---

7. Some of the administrative complexity and ambiguity engendered by this provision was ameliorated shortly after the operative events in this case. As noted by the ASBCA in an endnote to its opinion dismissing United Partition's appeals, effective July 29, 2002, FAR § 8.405–7 was amended to make referral of disputes to the scheduling office discretionary. *United Partition*, 03–2 BCA ¶ 32,264 at p. 159,597 note; *see* FAR § 8.405–7(a)(1) (2002). The requirement under FAR § 8.405–5 that an excusability defense to a termination for default be referred to the schedule contracting office, however, has not yet been similarly amended, although such an amendment has been proposed. *See* 68 Fed.Reg. 19294 (April 18, 2003) (proposed rule).

by it under the contract, exercise the same right of termination, acceptance of inferior articles or services, and assessment of excess costs as might the Contracting Officer, except that when failure to deliver articles or services is alleged by the Contractor to be excusable, the determination of whether the failure is excusable shall be made only by the Contracting Officer of the General Services Administration, to whom such allegation shall be referred by the ordering office and from whose determination appeal may be taken as provided in the clause of this contract entitled "Disputes."

Compl. Ex. 1 at 39. The requirement that the ordering office forward all assertions of excusability to the scheduling office is likewise embodied in FAR § 8.405–5.[8] When a contractor's claim pursuant to a default termination is referred to the schedule contracting office, that office is accorded responsibility for determining whether the termination should be excused and converted to one for the convenience of the government.[9]

In aggregate, the effect of these clauses is to strip the ordering office's contracting officer of authority to issue a final decision evaluating a contractor's excusability defense. However, they do not elide the ordering officer's authority over other aspects of the contract or limit his or her ability to take action under other contractual or regulatory provisions. Accordingly, the Court agrees with the conclusion of the Board that the Air Force's contracting officer lacked the authority to issue the final decision that it did issue, in light of these contractual and regulatory provisions and the fact that United Partition raised an excusability defense. Nonetheless, the Court does not hold that the Air Force's contracting officer was totally divested of authority by these same provisions. Indeed, the government has conceded that the Air

Force's contracting officer retained "some authority" over the contract and United Partition's claim. Hr'g Tr. at 60. The Air Force's contracting officer could have addressed various concerns raised in United Partition's claim by taking action other than converting the termination to one for the convenience of the government. For example, the Air Force's contracting officer could have issued a change order in response to United Partition's previous request for an equitable adjustment. FAR § 52.243–4 ("Changes"); see Compl. Ex. 1 at 68. The Air Force could have re-evaluated its analysis of the materials that United Partition had supplied and decided to accept them and pay for what had already been delivered. FAR § 52.246–12 ("Inspection of Construction"); see Compl. Ex. 1 at 67. In this vein, subsequent to the termination, the Air Force's contracting officer continued to exercise authority over the contract by demanding that United Partition dispose of the materials it had delivered to Luke AFB. Compl. Ex. 26. See also Compl. Ex. 1 at 31 (clause E–FSS–522 ("Inspection at Destination") obligating contractor to follow "Contracting Officer's instructions" with regard to rejected supplies). Furthermore, pursuant to FAR § 8.405–5, the Air Force's contracting officer retained final authority to issue a counterclaim against United Partition should United Partition's excusability defense be rejected by GSA's contracting officer.[10] Although the Air Force's contracting officer did not retain authority to evaluate United Partition's excusability defense, that is precisely what he did in issuing his final decision denying United Partition's claim and demanding reprocurement costs. In that respect, the Air Force's contracting officer was obliged by FAR § 8.405–5, quoted supra, at 636 n. 8, "promptly [to] refer the matter to the schedule contracting office," and he manifestly failed so to do.

---

8. Among other procedural requirements, FAR § 8.405–5 provides—

(2) Should the contractor claim that the failure was excusable, the ordering office shall promptly refer the matter to the schedule contracting office. In the absence of a decision by the schedule contracting office (or by the head of the schedule contracting agency, on appeal)

excusing the failure, the ordering office may charge the contractor with excess costs resulting from repurchase.
FAR § 8.405–5(a)(2).

9. See infra, at 639 – 640.

10. See infra, at 643.

### 3. Submission and receipt of United Partition's claim.

When a contracting officer goes beyond the scope of his authority and issues a final decision that is jurisdictionally invalid, such a decision is treated as a legal nullity and, accordingly, does not affect a contractor's rights or obligations. *See D.L. Braughler Co. v. West,* 127 F.3d 1476, 1480 (Fed.Cir. 1997) (when a contracting officer lacks authority to issue a final decision, subsequent proceedings "have no legal significance"). Accordingly, in light of the ASBCA's dismissal of United Partition's appeals, grounded in its determination that the Air Force's contracting officer did not have the proper authority to issue the final decision on United Partition's claim that he issued, this Court deems both the Air Force's contracting officer's decision denying United Partition's claim, as well as United Partition's appeals to the ASBCA, to be nullities, and it will proceed as if they never occurred. *See National Neighbors, Inc. v. United States,* 839 F.2d 1539, 1542 (Fed.Cir.1988) (an appeal to an agency board of contract appeals is considered an "absolute nullity" when such board lacks jurisdiction over the matter).[11]

The Court then is left with the following situation—United Partition's claim was mailed to the Air Force's contracting officer on January 25, 2002, and received by him on January 28, 2002. No events of significance to this Court's subject matter jurisdiction transpired until May 20, 2003, when United Partition filed its complaint in this Court. Shortly thereafter, the Air Force's contracting officer forwarded United Partition's claim to GSA's contracting officer on May 25, 2003, and GSA's officer received the claim on June 3, 2003. The Court must determine whether, on the date United Partition filed its complaint, the requirements for subject matter jurisdiction existed. *See Sharman Co. v. United States,* 2 F.3d 1564, 1569 (Fed.Cir. 1993), *overruled in part on other grounds,*

*Reflectone, Inc. v. Dalton,* 60 F.3d 1572, 1579 & n. 10 (Fed.Cir.1995) (en banc).

In support of its basic jurisdictional arguments, the government avers that "the 60–day period in which the contracting officer must make a final decision begins only after the claim's *receipt* by the contracting officer" and that GSA's contracting officer's actual receipt is the critical event in this case. Mot. at 11–13 (quoting *Dawco Constr., Inc. v. United States,* 930 F.2d 872, 880 (Fed.Cir. 1991), *overruled in part on other grounds, Reflectone, Inc.,* 60 F.3d at 1579). However, the government's reliance on *Dawco* in this instance is misplaced. In *Dawco* the Federal Circuit's ruling was limited to the question of whether the claim at issue there had been properly "submitted" for purposes of the CDA to grant jurisdiction to the contracting officer to render a final decision. *Dawco,* 930 F.2d at 879–80. In analyzing this issue, the Federal Circuit deliberately adopted a broad definition of "submission," stating that "the purpose of the Act's 'submit' language is not related to the minutia of addressing or delivering claim letters, as the government argues, but is merely a requirement that once a claim is made, the parties must 'commit' the claim to the contracting officer and 'yield' to his authority to make a final decision." *Id.* at 880. The Federal Circuit ultimately ruled that the claim at issue had been properly "submitted" to the contracting officer. *Id.*

For its part, United Partition draws upon *Dawco* to urge this Court to hold that its claim was "received" for purposes of Paragraph 605(c)(2) at the time the Air Force contracting officer received the submitted claim. There is merit to United Partition's parsing of *Dawco.* In effect, the *Dawco* court's ruling is that once a contractor delivers a claim to its regular contact within the agency and requests a final decision by the contracting officer, the contractor's obligations under the CDA have been fulfilled. *Id.* at 880. Stated differently, to commence

---

11. The Court agrees with the ASBCA's analysis and conclusion that the Air Force's contracting officer did not have proper authority to issue a final decision evaluating United Partition's excusability defense and stating a demand against United Partition. *United Partition,* 03–2 BCA ¶ 32,264 at pp. 159,596–97. However, because

the ASBCA subsequently determined that it lacked jurisdiction over the matter, the Court declines simply to adopt the Board's ruling as binding on this case and this Court. *See generally Suel v. Sec'y of Health and Human Servs.,* 192 F.3d 981, 984–85 (Fed.Cir.1999).

the CDA process, a contractor may at most be held responsible for fulfilling the tasks required to commit its claim to the government and to request that a decision be rendered on the claim; subsequent responsibility for processing the claim then resides with the government. This reasoning was reflected in the Federal Circuit's decision in *D.L. Braughler Co.*, 127 F.3d at 1481–82, in which the court held a claim not to have been properly "submitted" when the documentation was sent to the government but "gave no indication that [the contractor] was seeking a final decision from the contracting officer" and hence was not delivered to the appropriate contracting officer.

Here, United Partition originally delivered its claim to the particular Air Force contracting officer who had been assigned responsibility. Compl. ¶ 7 and Ex. 4. This contracting officer had signed the termination order, had identified himself as the "Termination Contracting Officer," and had been indicated as the person to whom United Partition should submit its written claim. Compl. Ex. 24, 27, 28. In the cover letter to its claim and within the claim itself, United Partition specifically requested "that the contracting officer issue a written decision on this claim within 60 days of receipt." Compl. Ex. 4. Under both *D.L. Braughler* and *Dawco*, United Partition's actions were sufficient for the claim to have been submitted for decision.[12]

■ The Air Force officer who received the claim was under an affirmative obligation based on the contract and applicable regulations to determine who had authority to render a final decision and to handle the claim

accordingly. Clause I–FSS–249–B provides that allegations that a contractor's failure to perform are excusable "*shall* be forwarded *by the ordering office* " to "the Contracting Officer of the General Services Administration." Compl. Ex. 1 at 39 (emphasis added). This provision of the contract thus expressly placed the responsibility for ensuring delivery of United Partition's excusability claim to GSA's contracting officer on the Air Force's contracting officer. When considering a contractor's submitted claim under a procedurally similar FSS contract, the General Services Board of Contract Appeals has explained that "[a]lthough the regulations provide that disputed termination actions of ordering agencies be presented to GSA for decision before appeals [to the Board of Contract Appeals] are pursued, *it is not the contractor's responsibility to seek this decision.*" *GF Office Furniture, Ltd.*, GSBCA No. 11,-058, 91–3 BCA ¶ 24,157 at p. 120,875, 1991 WL 114730 (1991) (emphasis added).[13]

This Court has rejected attempts by the government to attack a contractor's submission of a claim based on its delivery to the wrong government employee. *See Flying Horse v. United States*, 49 Fed.Cl. 419, 428–29 (2001) (plaintiff did not know who proper contracting officer was and government failed to make proper inquiry and forward the claim). As explained in *Wallace O'Connor Int'l, Ltd. v. United States*, 23 Cl.Ct. 754, 758 (1991),

> [d]ispatch of the claim to the CO with the correct address . . . met the CDA "submission" requirements, notwithstanding the fact that the claim did not reach the CO personally. To hold otherwise would allo-

---

**12.** In addition to the "submission" of a claim, the CDA requires that the claim itself meet basic procedural requirements: it must be in writing, set forth the basis on which the contractor seeks relief, and identify a sum certain that the contractor seeks to recover. *Reflectone*, 60 F.3d at 1575–76; *GPA–I, LP v. United States*, 46 Fed.Cl. at 762, 766 (2000). Additionally, a claim in excess of $100,000 must be properly certified. 41 U.S.C. § 605(c)(1); *D.L. Braughler*, 127 F.3d at 1480. There has been no contention by the government that United Partition's claim was deficient in any of these respects, and the copy of the claim attached to the complaint appears to satisfy the requirements. Compl. Ex. 4; *see also* Hr'g Tr. at 7.

**13.** The General Services Board of Contract Appeals ultimately dismissed the claim in *GF Office Furniture* for lack of subject matter jurisdiction due to the fact that a GSA contracting officer had not rendered a final decision. 91–3 BCA ¶ 24,-157 at p. 120,875. That tribunal, however, operates with a narrower jurisdiction than this Court. Before a Board, a decision must be issued by a contracting officer from a specific agency (*e.g.*, GSA) before jurisdiction may vest, rather than by any contracting officer with authority, as is the case for this Court. *Compare* 41 U.S.C. § 607(d) *with* 41 U.S.C. § 609(a)(1) and 28 U.S.C. § 1491(a)(1).

cate the risk of interagency misdirection of mail on the contractor and would require contractors to physically deliver their claims to the CO to ensure compliance with the CDA.

In *Wallace O'Connor*, the contractor mailed its claim to the agency, but the agency's mailroom failed to deliver it to the appropriate contracting officer. *Id.* at 756.[14]

The government has argued that even in instances where *submission* of a claim was complete upon delivery to someone other than the "appropriate" contracting officer, "any risk of delay [before the contracting officer's receipt of the claim] falls upon the contractor." Hr'g Tr. at 13. In support of this proposition, the government refers to *American Pacific Roofing Co. v. United States*, 21 Cl.Ct. 265 (1990). *See* Hr'g Tr. at 13–14. In *American Pacific*, the contractor submitted its claim to the resident officer in charge of construction ("ROICC") responsible for the project, as required by the contract at issue. 21 Cl.Ct. at 268. This Court's predecessor, the United States Claims Court, held that such actions qualified as "submission" of the claim under the CDA but that the sixty-day period for determining whether there had been a deemed denial did not begin until the contracting officer actually received the claim from the ROICC. *Id.* In so holding, the court explained, "[u]ntil receipt of the submission, the [contracting officer] is under no obligation to act[, and the] contractor bears the risk for delayed or lost submissions prior to receipt by the CO." *Id.*[15]

*American Pacific* is not a persuasive precedent for this case, however. Unlike the contractor in *American Pacific*, United Partition did submit its claim directly to a contracting officer with authority to address at least some of the concerns raised in the claim. The facts of this case also are readily distinguishable from those in *American Pacific* on yet a further ground—here, the Air Force's contracting officer with authority who received the claim had a legal obligation "promptly" to refer the matter to GSA's contracting officer in accord with FAR § 8.405–5. Thus, in this case, unlike in *American Pacific*, the pertinent obligation rested on the Air Force's contracting officer. On these facts, the resulting risk inhered with the government and not with the claimant.

▪▪▪ For purposes of 41 U.S.C. § 605(c)(2), therefore, in this instance where two agencies' contracting officers had concurrent, partial authority over the claim, submission to, and receipt by, the Air Force's contracting officer triggered the statutory sixty-day period for governmental action. Upon receipt of the claim, the Air Force's contracting officer had the responsibility, within this time period, for evaluating the claim, determining the appropriate official to address aspects of the claim, forwarding United Partition's claim as necessary, and either issuing a final decision or notifying United Partition of a date by which a valid final decision would be issued.[16] That officer's erroneous decision that he was authorized to issue a decision on excusability and his concomitant

---

14. Applying similar logic, the Federal Circuit has also held that information being delivered in the other direction, *i.e.*, from the contracting officer to the contractor, need only be delivered to an authorized agent of the contractor to fulfill the "receipt by the contractor" requirements of Section 609(a)(3) of the CDA. *Borough of Alpine v. United States*, 923 F.2d 170, 172 (Fed.Cir.1991) ("[T]he Claims Court must focus its inquiry on the date of receipt by the contractor, not the date of actual notice to the contractor."). *But see Logicvision, Inc. v. United States*, 54 Fed.Cl. 549 (2002) (holding a contracting officer's issuance of notice to be the triggering event under the "notify" provision of Section 605(c)(2) rather than contractor's receipt of that notice).

15. In *American Pacific*, the Court also held that interest on any award to the plaintiff would ac-

crue from the date of the contracting officer's actual receipt of the claim rather than the ROICC's receipt thereof. 21 Cl.Ct. at 268–69.

16. The government's contracting officer has the authority under the CDA to extend the sixty-day action period by simply notifying the contractor of the additional time necessary to complete the procedural requirements for properly evaluating a claim. 41 U.S.C. § 605(c)(2)(B). Such an extension, of course, must be reasonable and may not result in undue delay, but it may appropriately take into consideration the complexity of the contract and claim. 41 U.S.C. § 605(c)(3)-(4). Additionally, the government's administrative burden will potentially be ameliorated in future cases by the amendments and proposed amendments to the FAR discussed *supra*, at 635 n. 7.

failure to forward the claim to GSA's contracting officer cannot be held against United Partition. *See Cincinnati Elecs. Corp. v. United States,* 32 Fed.Cl. 496, 502–03 (1994) (holding that a contracting officer's mistaken belief about his own authority to render a final decision that resulted in no final decision being issued was a proper basis for deeming a claim denied, thus establishing jurisdiction in this Court). Where a government official has some authority and responsibility, his failure to handle a claim properly, even when the result of a genuine error, should not preclude a contractor from seeking judicial relief until the government eventually delivers the contractor's claim to another appropriate officer. To hold otherwise would allow the government to "find refuge in bureaucracy," *Flying Horse,* 49 Fed.Cl. at 428, and undermine the goal of timely resolution of claims embodied in the CDA, 41 U.S.C. § 605(c). Accordingly, sixty days after the Air Force's contracting officer's receipt of United Partition's claim, *i.e.,* on March 29, 2002, United Partition could properly treat its claim as denied pursuant to 41 U.S.C. § 605(c)(5) and bring its claim within the jurisdiction of this Court by filing a timely complaint.[17]

### 4. Air Force's counter-claim for reprocurement expenses.

Included in the Air Force's final decision mailed to United Partition and its counsel on May 20, 2002, was a demand that United Partition pay the government "excess reprocurement costs in the amount of $10,987.50." Compl. Ex. 7 at 1. This demand purported to be issued "in accordance with Federal Acquisition Regulation (FAR) 32.610." *Id.* This provision of the FAR, which bears the heading "Demand for payment of contract debt," provides that "[a] demand for payment shall be made as soon as the responsible official has computed the amount of refund due. If

the debt arises from excess costs for a default termination, the demand shall be made without delay, as explained in [FAR § ] 49.402–6." FAR § 32.610(a). Subsection 49.402–6 of the FAR provides the authority under which a contracting officer may cover the additional costs to the government associated with a contract termination for default and charge those costs to the contractor. This Subsection bears the heading "Repurchase against contractor's account" and is located within Subpart 49.4, which is labeled "Termination for Default."

Subsection 49.401 of the FAR, which contains "General" terms applicable to the regulations within Subpart 49.4, explains that "[i]f the contractor can establish, or it is otherwise determined that the contractor was not in default or that the failure to perform is excusable ... a termination for default will be considered to have been a termination for the convenience of the Government, and the rights and obligations of the parties governed accordingly." FAR § 49.401(b). This provision is substantially the same as that set forth in FAR § 52.249–10, which is incorporated into the contract by reference. Compl. Ex. 1 at 69. This clause provides that the contractor may not be charged for damages as a result of a default termination if the delay in performance "arises from unforeseeable causes beyond the control and without the fault or negligence of the Contractor." FAR § 52.249–10(b)(1). The clause also provides a list of examples of such unforeseeable causes, including "acts of the Government in either its sovereign or contractual capacity." *Id.* at § 52.249–10(b)(1)(ii). The substance of these provisions is further reflected in FAR § 8.405–5, which sets forth the procedures to be applied in rendering a default termination under an FSS order. *See* FAR § 8.402 ("Procedures in this subpart [8.4] apply to

---

17. A deemed denial under the CDA is not subject to the same twelve-month limitations period as a contracting officer's written final decision. *See* 41 U.S.C. § 609(a)(3); *Pathman Constr. Co. v. United States,* 817 F.2d 1573 (Fed.Cir.1987); *Schickler v. United States,* 54 Fed.Cl. 264, 271 (2002) (the CDA's 12–month statute of limitations begins to run when the contracting officer issues a written decision on the claim, but a deemed denial does not start the clock). *Cf. Puget Sound Energy, Inc. v. United States,* 47 Fed.Cl. 506, 514 (2000) (transferring case to Ninth Circuit pursuant to 28 U.S.C. § 1631, after discussing a statutory scheme under which Congress specifically provided that a different statute of limitations begins to run when certain agency actions are "deemed final").

orders placed against Federal Supply Schedules.").

When a government contract is terminated for the convenience of government, the general framework for proceeding is that the parties will work toward a settlement under which the contractor will be compensated for the work it had completed and the government may deduct certain amounts from the contractor's payment. *See* FAR §§ 49.201 to 49.205, 52.249–2. Such an arrangement is in stark contrast to a termination for default, in which the contractor "is liable to the Government for any excess costs incurred in acquiring supplies and services similar to those terminated for default, and for any other damages, whether or not repurchase is effected." FAR § 49.402–2(5)(e) (internal citations omitted). In light of the substantive difference between these types of termination, the procedures set forth at FAR § 8.405–5, as well as the "Disputes" provisions of FAR § 8.405–7, require that an assertion of excusable failure by the contractor be resolved by the "schedule contracting officer" (*i.e.*, GSA's contracting officer) prior to the assessment of excess reprocurement costs under the default termination provisions.

When the Air Force issued its modification on September 14, 2001, the responsible official succinctly stated that "[t]he reason for this modification is to terminate this order *for default*." Compl. Ex. 24 at 1 (emphasis added). Conversely, United Partition alleged in its claim that its "failure to complete [the contract] was due to the actions, or lack thereof, of Luke AFB." Compl. Ex. 4 at 6, ¶ 16. Because "acts of the Government in either its sovereign or contractual capacity" may form the basis for concluding that a contractor's alleged default was excusable, FAR § 52.249–10(b)(1)(ii), a determination by GSA's contracting officer respecting the Air Force's actions was required *before* a demand for payment under a default termination could be issued. *See* FAR § 8.405–5; Compl. Ex. 1 at 39 (clause I–FSS–249–B). Thus, in this instance, while other authority with regard to the contract remained with the Air Force's contracting officer, GSA's contracting officer was expressly assigned by

the FAR the task of determining whether the alleged default was excusable and consequently whether to permit the termination to be converted to one for the convenience of the government. Absent such a determination, the demand issued by the Air Force's contracting officer was invalid. Because "an invalid contracting officer's decision may not serve as the basis for a CDA action," this Court does not have jurisdiction over the Air Force's demand for reprocurement costs. *Case, Inc.*, 88 F.3d at 1009 (citing *United States v. Grumman Aerospace Corp.*, 927 F.2d 575, 579 (Fed.Cir.1991)).

### C. Jurisdiction Over GSA's Contracting Officer's Final Decision

#### 1. Judicial stay to allow GSA's contracting officer to issue a final decision.

##### a. Court's authority to issue a stay.

United Partition has also invoked the provision of Paragraph 605(c)(5) which provides that if "an appeal or suit is so commenced [on the basis of a deemed denial] in the absence of a prior decision by the contracting officer, the tribunal concerned may, at its option, stay the proceedings to obtain a decision on the claim by the contracting officer." *See* Opp. at 10–11. This Court's authority to refer a case back to a contracting officer is also embodied in RCFC 56.2(a)(1), which provides that "[a]t the request of a party or on its own motion, the court may in any case within its jurisdiction by order remand appropriate matters to any administrative or executive body or official with such direction as may be deemed proper and just." On September 26, 2003, this Court stayed the proceedings in this case to obtain a final decision by GSA's contracting officer.

The exercise of the Court's authority to issue a stay under Paragraph 605(c)(5) is committed to the Court's discretion. *See Durable Metal Prods., Inc. v. United States*, 21 Cl.Ct. 41, 47 (1990). The Court may issue a stay to obtain a final decision when the Court believes that such a decision would be beneficial to the parties

and assist resolution of the matter. *See Sparks v. United States,* 36 Fed.Cl. 488, 492–93 (1996). However, jurisdiction over a case must be determined under the actual circumstances and events existing at the time the complaint is filed, and events that transpire during a stay and subsequent to the filing of a plaintiff's complaint may not, in and of themselves, serve as the sole basis of jurisdiction for the Court. *See Logicvision,* 54 Fed.Cl. at 553; *Tecom Indus. v. United States,* 24 Cl.Ct. 611, 614 (1991) ("This court cannot stay action under section 605(c)(5) ... or proceed on a claim under the CDA in the absence of a decision, or deemed denial of a claim, by the contracting officer.").

In instances where the Court has issued such stays, it has often been in conjunction with a specific determination that the Court had subject matter jurisdiction from the onset of an action. *See Sparks,* 36 Fed.Cl. at 492–93; *Cincinnati Elecs.,* 32 Fed.Cl. at 505 ("Such a stay is consistent with the court's finding that it has subject matter jurisdiction over these claims."); *Wallace O'Connor,* 23 Cl.Ct. at 758. *Compare Tecom,* 24 Cl.Ct. at 614 (because the court lacked jurisdiction, a stay was improper), *with Diversified Energy, Inc. v. Tennessee Valley Auth.,* 339 F.3d 437, 447 (6th Cir.2003) (applying the CDA and stating, "in light of our holding that the district court had jurisdiction ..., there was no need for the district court to stay the judicial proceedings."). As explained above, the Court finds that it has and has had jurisdiction over this matter because United Partition's claim was deemed denied before the complaint was filed. Accordingly, the Court had authority to issue the stay order "to obtain a decision on the claim by the [GSA] contracting officer." 41 U.S.C. § 605(c)(5). Nevertheless, the decision issued by GSA's contracting officer is not currently within the Court's jurisdiction.

*b. GSA's contracting officer's authority while claim is in litigation.*

■ In the course of briefing and arguing the currently pending motion, the government has changed its position with regard to GSA's contracting officer's authority and thus the validity of that officer's decision issued during the stay of proceedings. Initially, the government specifically averred that "because United [Partition] now has a valid contracting officer's final decision, it will be able to file a complaint in this Court over which the Court will be able to assert jurisdiction." Mot. at 16. However, at the hearing counsel withdrew this statement and argued that the contracting officers lost all authority over the claim when United Partition initiated its lawsuit in this Court. Hr'g Tr. at 16–21, 62. *See also* Def.'s Supp. Br. at 3.

■ The Federal Circuit has explained that "[o]nce a contract claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation." *Sharman Co.,* 2 F.3d at 1571 (citing 28 U.S.C. §§ 516–20; *Hughes Aircraft Co. v. United States,* 209 Ct.Cl. 446, 534 F.2d 889, 901 (1976)). The Justice Department's exclusive authority is said to "divest[ ] the contracting officer of his authority to issue a final decision on the claim." *Sharman Co.,* 2 F.3d at 1571 (citing *Durable Metal Prods.,* 21 Cl.Ct. at 46). This jurisdictionally limiting doctrine, as the government formulates it, would suggest that GSA's contracting officer did not have power to act on United Partition's claim after it had been forwarded by the Air Force because the matter was already in litigation in this Court.

A case in this Court, *Witherington Construction Corp. v. United States,* 45 Fed.Cl. 208, 211–12 (1999), extended *Sharman* by holding that "a contracting officer may not render a 'final decision' on a claim following the initiation of litigation on that claim," absent affirmative action by an official of the Department of Justice with settlement authority asking the Court to retrocede authority to the contracting officer pursuant to Paragraph 605(c)(5). In reaching its decision, the Court in *Witherington* reasoned that "[i]f the power to delegate litigating authority exists at all, it resides only in the Attorney General and, arguably, such other Department of Justice officials authorized to settle a claim of the dollar magnitude at issue (*e.g.,* the Assistant Attorney General)." *Id.* at 212 n. 5. The Court explained that "the Justice Department line attorney assigned to [the] case" did not possess "anything approaching

the requisite settlement authority to perform such a delegation" and, thus, any acquiescence by that attorney to a stay would be insufficient to grant proper authority to the contracting officer. *Id.* at 212 & n. 5.

The holding of *Witherington* reaches too far. Statutory provisions in the CDA bear on the authority of the Department of Justice and the Attorney General to conduct litigation under the CDA on behalf of the federal government.[18] Most importantly here, 28 U.S.C. § 516 provides *"[e]xcept as otherwise authorized by law,* the conduct of litigation in which the United States . . . is a party . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General." (emphasis added). As discussed above, the CDA contains a specific provision within Paragraph 605(c)(5) authorizing this Court, through the issuance of a stay, to refer a pending matter back to a contracting officer for the purpose of obtaining a final decision. This Court's action in making such a reference or not would occur only after counsel for the parties have had an opportunity to be heard. In their participation in that connection, counsel for the parties, including especially the government, would presumably proceed in a normal, customary fashion. *I.e.,* the personal activity of high-ranking officials of the Department of Justice would not be necessary.

The Federal Circuit's opinion in *Sharman* did not touch on the authority derived from Paragraph 605(c)(5) respecting a case in which the Court has concluded it possesses jurisdiction over a claim. In *Sharman,* the CDA's jurisdictional prerequisites had not been met when the complaint was filed. 2 F.3d at 1569. Similarly, the Court in *Witherington* ultimately decided that it lacked jurisdiction from the beginning over the plaintiff's monetary claim at issue because no valid contracting officer's decision had been issued at the time the complaint was filed. 45 Fed.Cl. at 212. Absent such jurisdiction,

therefore, the Court in *Witherington* should not have addressed whether attorneys in the Department of Justice who lacked settlement authority had the power to consent or urge a referral to a contracting officer, when the pertinent inquiry actually was about the Court's *own* authority to refer the matter to the contracting officer for a final decision.[19] Consequently, the extension of *Sharman* in *Witherington* must be discounted. In instances where this Court lacks jurisdiction over a claim, it is not empowered to issue a stay or otherwise to act regarding that claim. However, when the Court does possess jurisdiction over a claim based on a deemed denial, it is specifically granted discretion to retrocede authority to the contracting officer by Paragraph 605(c)(5) of the CDA.

In short, rather than being interpreted as a limitation on the Court's authority to exercise the discretion that Congress ceded to it in Section 605 to refer a case that is properly before it to a contracting officer for a final decision, these precedents should be read to bolster the axiomatic concept that jurisdiction must be established at the time the plaintiff files its complaint. Absent such jurisdiction, this Court would be powerless to issue a stay under Paragraph 605(c)(5). By contrast, in appropriate instances, this Court has issued a stay under Section 605 and has proceeded to exercise jurisdiction over the ensuing contracting officer's decision. *See, e.g., Sparks,* 36 Fed.Cl. at 492–93; *Cincinnati Elecs.,* 32 Fed.Cl. at 505. Accordingly, because (1) the Court has had jurisdiction over this case on a deemed-denied basis, (2) the Court acted pursuant to Paragraph 605(c)(5) to issue a stay to obtain a final decision from GSA's contracting officer on the excusability aspect of United Partition's claim, and (3) the Court did so after proceedings that involved the full participation of both parties (with the United States being represented by the Department of Justice's

---

18. In deciding whether a given matter was in litigation, courts have held that the doctrine confining authority to litigate for the federal government should be "narrowly construed because of its potential for disruptive effects." *Buse Timber,* 45 Fed.Cl. at 265 (citing *Case, Inc.,* 88 F.3d at 1011, and *Hughes Aircraft Co.,* 534 F.2d at 901).

19. Notably, each of the cases cited by the Court in *Witherington* in support of its holding regarding the Department of Justice's authority was also ultimately decided on the basis that the Court lacked jurisdiction at the time the complaint was filed.

lead counsel for the case),[20] GSA's contracting officer had been revested by the Court with authority to issue a final decision on United Partition's claim.

■ However, GSA's contracting officer went beyond the scope of her authority by issuing a demand for reprocurement costs against United Partition. As discussed *supra*, at 635 – 637, GSA's contracting officer was expressly charged with responsibility and authority to consider the excusability defense raised by United Partition. Subsequent to the contracting officer's rendering a decision on this issue, the contract and applicable regulations then vested authority in the Air Force's contracting officer to issue a demand for reprocurement costs.[21]

### 2. Supplemental pleading pursuant to Rule 15(d) to bring GSA's decision before the Court.

■ United Partition's complaint contains no reference to GSA's contracting officer's final decision and, indeed, given the relative timing of events in this case, it could not do so. Accordingly, the Court does not currently have before it GSA's final decision on the excusability issue. However, such decision may be brought within the Court's jurisdiction over this case through a supplemental pleading. RCFC 15(d) provides that:

> [u]pon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense.

This Rule is identical to its counterpart in the Federal Rules of Civil Procedure. The Supreme Court has interpreted Fed.R.Civ.P.

15(d) to permit supplemental pleadings in which a plaintiff may correct a jurisdictional defect in its complaint by informing the court of post-complaint events. *Mathews v. Diaz*, 426 U.S. 67, 75, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). Similarly, the Federal Circuit has explained that "defects in a plaintiff's case— even jurisdictional defects—can be cured while the case is pending if the plaintiff obtains leave to file a supplemental pleading under Rule 15(d) reciting post-filing events that have remedied the defect." *Black v. Sec'y of Health and Human Servs.*, 93 F.3d 781, 790 (Fed.Cir.1996). "Rule 15(d) is intended to give the court broad discretion in allowing a supplemental pleading." Fed. R.Civ.P. 15(d) Advisory Committee's note to 1963 amendment.

The government has noted that the Court may allow a plaintiff to amend its complaint to correct defects in jurisdictional or factual allegations, Mot. at 15–16, but it has argued that such an amendment may not encompass matters that "did not exist when the original complaint was filed [and] cannot relate back to the original filing date to create jurisdiction where none existed." Mot. at 16. The government's argument, however, disregards the subtle distinction between supplemental and amended pleadings inherent in the differences between Paragraphs (c) and (d) of Rule 15. *See Mathews*, 426 U.S. at 75 n. 9, 96 S.Ct. 1883 ("the defect in [the claimant's] allegations must be cured by supplemental pleading, instead of amended pleading"). "Rule 15(d) ... plainly permits supplemental amendments to cover events happening after suit." *Griffin v. County Sch. Bd. of Prince Edward County*, 377 U.S. 218, 227, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964).

In *Mathews*, the Supreme Court permitted a claimant under the Social Security Act to supplement his complaint when he had filed his application for entitlement only after commencement of his lawsuit. *Mathews*, 426

---

20. In this case, because the attorneys with the Department of Justice responsible for representing defendant favored, or at least did not oppose, a stay to obtain the views of GSA's contracting officer, the Court explicitly reserves any ruling on the question whether the Court could issue such a stay under Paragraph 605(c)(5) against the objections of the government's counsel.

21. Notably, as is frequently the case with the CDA and its regulations, such arrangement does not establish the most efficient or practical framework for resolving disputes over contractual claims. *See generally Volmar Construction v. United States*, 32 Fed.Cl. 746, 761 (1995); *Grant Communications*, 99–1 BCA ¶ 30,281 at p. 149,-783 note.

U.S. at 75, 96 S.Ct. 1883. Filing such an application was established by statute as a "nonwaivable condition of jurisdiction," but nevertheless the Court held that when the condition was satisfied *after* the filing of the complaint, it was "not too late ... to supplement the complaint to allege this fact." *Id.* The Court then deemed the claimant's complaint to be supplemented by the government's stipulation that the precondition had, in fact, been met. *Id.* at 75–77, 96 S.Ct. 1883.

The Federal Circuit has subsequently refined the interpretation of Rule 15(d) to hold supplemental pleadings to be appropriate to cure jurisdictional defects so long as the late-occurring jurisdictional event occurs within the limitations period and outside of any statutorily required waiting period. *Black*, 93 F.3d at 790–92. In permitting the supplemental pleading in *Black*, the Federal Circuit specifically noted that "there would be no more than a formal distinction between filing a supplemental pleading and filing a new petition with the additional ... allegations included, a procedure the government concedes would be valid." *Id.* at 791–92.

In this case, as explained previously, there is no reason why the Court may not assert jurisdiction, pursuant to a supplemental pleading, over GSA's final decision on United Partition's claim.[22] Accordingly, because Rule 15(d) is an appropriate vehicle for bringing post-complaint occurrences within the purview of the Court, the Court grants United Partition leave to supplement its complaint pursuant to this Rule to encompass GSA's contracting officer's final decision.

### CONCLUSION

For the reasons set forth above, the Court holds that it has jurisdiction over the deemed denial of United Partition's claim submitted to the Air Force's contracting officer. Ac-

cordingly, the government's motion to dismiss is DENIED.

In addition, United Partition is granted leave to supplement its complaint to encompass the final decision issued by GSA's contracting officer. Such supplemental pleading shall be filed and served on or before February 27, 2004. The government shall respond to United Partition's supplemented complaint within the time provided by the Rules of this Court.

It is so ORDERED.

---

**22.** Because the deemed denial of United Partition's claim provides this Court with jurisdiction over that claim, and because *Wilner v. United States*, 24 F.3d 1397, 1402 (Fed.Cir.1994) (en banc), holds that "once an action is brought following a contracting officer's decision, the parties start in court ... with a clean slate," the filing of a supplemental pleading to encompass

GSA's contracting officer's decision may be somewhat of an academic exercise. However, the decision to seek the views of GSA's contracting officer had the benefit of giving the proper governmental official an opportunity to provide a means potentially of resolving the dispute, and the consequent supplementation has the advantage of recognizing reality.